HEISS, Executor, etc., vs. MURPHEY and others.

WILLS: CHARITABLE TRUSTS: *(1) Jurisdiction of courts of this state as to trusts. (2-4) The will of plaintiff's testator, for a charitable purpose, held invalid.*

1. In defining and enforcing trusts, the courts of this state have only a strictly *judicial* power, and have not succeeded to the jurisdiction over charities exercised by the English chancellor by virtue of the royal prerogative, under the doctrine of *cy pres*.

2. A will which "gives and bequeaths" real and personal property "to the Roman Catholic orphans" of a certain diocese in this state, with a further provision appointing plaintiff, the Roman Catholic bishop of said diocese, executor, and giving him "power to sell the above property and use the proceeds for the benefit of the Roman Catholic orphans," *held* void for uncertainty in the description of the beneficiaries; the *class* not being sufficiently defined, and no way being provided for selecting the *individual* beneficiaries from any class; and this uncertainty is fatal, whether the design was to pass the legal title to the beneficiaries, or to the executor in trust for them, or to confer upon the executor a *power* of sale, etc., in their behalf.

[3. *It seems* that the will may also be void because of the uncertainty as to whether the legal title to the property was designed to vest in the beneficiaries or in the executor.]

[4. *It seems* that, if the will be construed as designed to pass the legal title to the executor *in trust*, it would also be void under ch. 84, R. S., upon the principles established in *Ruth et al. v. Oberbrunner et al., supra.* Per COLE, J.]

APPEAL from the Circuit Court for *Dane* County.

The following statement of the nature of the action was originally included in the opinion of Mr. Justice COLE:

"This is a bill filed by the executor for the construction of the will, and for directions in regard to the execution of the trust created by it. By his will, the testator, after the payment of his debts, 'gives and bequeaths to the Roman Catholic orphans of the diocese of La Crosse, state of Wisconsin, all his real estate,' describing it. He also gives all of his personal estate of every description for the same purpose. He

then nominates and appoints the plaintiff, who is the Roman Catholic bishop of the diocese of La Crosse, executor, giving him 'power to sell the above property and use the proceeds for the benefit of the Roman Catholic orphans.'

"The diocese of La Crosse includes all of the state of Wisconsin north and west of the Wisconsin river, and south of Lake Superior; in which there were, according to the testimony, about 40,000 Roman Catholics, and the number is increasing.

"The heirs-at-law of the testator have put in an answer, in which they allege and claim that the provisions of the will are wholly inoperative for the following reasons: 1. For uncertainty; 2. That there are no persons or class of persons mentioned in the will, to whom the property is devised and bequeathed, that can be ascertained, selected or identified; 3. That the will does not devise or dispose of any property to any person or class of persons, or to any one; 4. That the will, as to the manner in which the property therein described is devised or bequeathed, as to the persons to whom it is attempted to devise or bequeath the same, and as to the objects for which the same is devised or bequeathed, is uncertain, and void as against the heir-at-law of the testator; and 5. That none of the pretended devisees or legatees are persons known to the law, or who in law are capable of taking and holding any devise or bequest."

In addition to the heirs-at-law, the attorney general of this state was named as a defendant to the suit, and served with process, but did not appear. Twelve other persons were also made defendants, and appeared to the action; six of whom are alleged to be full orphans, and the other six half orphans; and it is averred that these "were and still are of said diocese of La Crosse," and that they are made defendants "to represent the class and the interest of the class of orphans to which they respectively belong, and to the end that, under some appropriate inquiry or reference, all orphans who are in fact or in

law interested herein, may be ascertained, and their names reported to the court."

On the trial, the plaintiff, besides introducing the will in evidence, called a witness, who testified, *inter alia*, that he was " the settled clergyman at Prairie du Chien, and had charge of the estate for the bishop." He was then asked whether he knew " anything about an asylum having been commenced prior to the death " of the testator; and, an objection being overruled, answered: " The bishop commenced to build an asylum. The foundations were commenced before Murphey died; it was completed after. It is not yet used to keep the orphans." On cross-examination he said: " I call ' Roman Catholic orphans ' those whose parents died in the Roman Catholic faith." The direct examination being resumed, he said: " Children are baptized soon after birth, and admitted to communion between twelve and fourteen, and that constitutes membership." Upon his further cross-examination he said: " One can cease to be a practical Catholic; but the creed is, ' Once a Catholic, always a Catholic.' They can be excommunicated, and then they are excommunicated Catholics. One would not be a Catholic unless baptized." The direct examination being again resumed, he said: " Probably the church recognize as Catholic all that are baptized and admitted to sacrament, and adhere to the doctrines of the church." The witness was also asked what he thought " in reference to the number of orphans being ascertained; " and, an objection being overruled, he answered: " I think they could." No other witness was called on either side.

The court found as facts, *inter alia*, that it was " possible to ascertain with certainty the names of all persons in said diocese falling within the designation of ' Roman Catholic orphans of the diocese of La Crosse ' "; and that " a building has been partly erected in said diocese at the city of La Crosse, for the purpose of nurturing, maintaining and educating the Roman Catholic orphans of said diocese." As con-

clusions of law, it held that the will conferred upon the executor named therein a valid power in trust for the purposes therein expressed, the execution of which was imperative, and operated to convert said real estate into personalty for the purposes of the will; that the will was a valid disposition of the testator's real and personal property; that it was lawful for the executor, by virtue of the power contained in the will, to sell and convey said real and personal estate, and convert them into money, and, after payment of the testator's debts, etc., to use the proceeds for the benefit of all the Roman Catholic orphans of said diocese, including half as well as full orphans; and that he might lawfully devote said fund to founding or completing, or the income thereof to maintaining, an orphan asylum in said diocese for the nurture, maintenance and education of said orphans, to the benefits of which all belonging to said class should be entitled, or to otherwise use said fund for their benefit.

The heirs-at-law appealed from the judgment.

Briefs were filed by *Thomas & Webster* and *E. Van Buren*, respectively, for the appellants, and by *Gregory & Pinney* for the respondent; and the cause was argued orally at the January term, 1876, by *M. M. Webster* and *E. Van Buren* for the appellants, and *S. U. Pinney* for the respondent.

For the appellants it was argued, that the will contained no devise or bequest to a trustee, the power of sale given to the executor not creating him a trustee; and that if there had been a valid trustee appointed, the devise would be void for want of definite beneficiaries; that "the Roman Catholic orphans of the diocese of La Crosse" are persons unknown to the law, and incapable of being identified, and are therefore incapable, in law, of taking, holding or receiving any devise, bequest, grant or gift, and a conveyance or devise in trust for them would be void for want of any certain *cestui que trust*. 1 Jarman on Wills, 319; *Downing v. Marshall*, 23 N. Y., 384; *Levy v. Levy*, 33 id., 101, 102, 104; *Bascom v. Albertson*,

34 id., 588; *Le Page v. McNamara*, 5 Iowa, 124; *Zeisweiss v. James*, 63 Pa. St., 465; *Wilderman v. Baltimore*, 8 Md., 587; *White v. Attorney General*, 4 Ired. Eq., 19; *Bridges v. Pleasants*, id., 26. 2. Parol evidence is not admissible to show to what class of persons the testator referred. 1 Greenl. Ev., § 289; 2 Redf. on Wills, 398, § 31; Ram on Wills, 33; 3 Brown C. C., 258; 2 Atk., 239; 3 id., 257; 8 Conn., 263; 7 Bush, 515; 42 Ill., 376–389; 66 id., 417. 3. The system of charitable uses as administered by chancery in England was founded upon statute 43 Eliz. *Levy v. Levy*, pp. 107, 109; *Baptist Association v. Hart's Ex'rs*, 4 Wheat., 1; *Wilderman v. Baltimore*, *supra*, ; *Seaburn v. Seaburn*, 15 Gratt., 423. But whether created by the statute or previously existing, it has been abrogated here. (1) By the statute of mortmain, 9 Geo. II, ch. 36, which was in force as part of the law of England at the time of the American Revolution, and as such was adopted here. *Coburn v. Harvey*, 18 Wis., 147; *Wilderman v. Baltimore*, *Seaburn v. Seaburn*, *Bridges v. Pleasants*, *Le Page v. McNamara*, and *Baptist Assocition v. Hart's Ex'rs*, *supra; Fontain v. Ravenel*, 17 How. (U. S.), 369; *Trippe v. Frazier*, 4 Har. & Johns., 446; *Dashiell v. Attorney General*, 5 id., 392; *Galego's Ex'rs v. Attorney General*, 3 Leigh, 450. (2) By our own statute, ch. 84, R. S., which abolishes *all* uses and trusts except those authorized and modified in that chapter. *Levy v. Levy*, *Downing v. Marshall* and *Bascom v. Albertson*, *supra; Owens v. The Miss. Soc. of the M. E. Church*, 14 N. Y., 380; *Beekman v. Bonsor*, 23 id., 298; *White v. Howard*, 46 id., 162–3; *Holmes v. Mead*, 52 id., 343–4. 4. The trust cannot be upheld under subd. 5, sec. 11 of ch. 84, R. S. (1) It is not an active but a *passive* trust. (2) It is not "fully expressed and clearly defined." (3) The "person or persons" mentioned in that subdivision must be persons capable of being known — definite beneficiaries. 5. When our statute was enacted, the legislature knew that charitable uses had been

abolished in England for more than a century and a half, on account of their pernicious influence.    Our law nowhere recognizes such charities; and it is fair to presume that the legislature did not intend to recognize them.    6. Nothing is gained for the validity of the will by saying that it creates a *power* in trust; the failure to designate any ascertainable person or class of persons as beneficiaries being fatal to such a power. See ch. 85, R. S., and the cases above cited.    7. Under our law the courts cannot create a scheme for carrying into effect the provisions of the will *cy pres*, as is done by the chancellor in England by virtue of the royal prerogative.    *Le Page v. McNamara* and the New York cases already cited.    8. A devise of lands to an indefinite beneficiary, with power given the executor to sell the lands for the benefit of such devisee, will not be sustained on the ground that the real estate is thus converted into personalty, and that the statute of uses and trusts applies only to real estate.    See *Le Page v. McNamara*, 5 Iowa, 124, and cases there cited; and observe that in Iowa they have not even a statute like ours abolishing uses and trusts.    Moreover, there is nothing in sec. 1, ch. 84, R. S., to exclude trusts of personal estate, if any such existed, from the effect of the abolishing clause; and if the statute relates only to realty, then there is no statutory authority, as there was none at common law, for a charitable trust of personalty. Again, the decree here allows the executor to use the fund in erecting, etc., an orphan asylum, thus converting the fund again into realty.    If it be true that a devise of land with a power to convert it into money makes it personalty, it is equally true that where there is a bequest of personal property with a power to convert it into real estate, the property is to be regarded as real property.

For the respondent it was argued, that the first clause of the will, independent of the appointment, power and duty devolved on the respondent, would be good as a *devise of the fee*.    It is sufficient, in such a case, that the devisees are so described

that they can be ascertained and known; and resort may be had to extraneous evidence in regard to the identity of persons. 2. Washb. R. P., 588, and cases in note; *Thomas v. Marshfield*, 10 Pick., 367; *Holmes v. Mead*, 52 N. Y., 342–3. But taking the first clause in connection with the power conferred on the executor in the second clause, it is plain that the testator did not intend that the fee should vest either in the orphans or in the respondent as executor or trustee, but intended to confer on the respondent a *power* to convert his property into money, and make him trustee of the fund, to use it for the benefit of the orphans described. The will, therefore, creates *a power in trust* for the benefit of a certain class of persons. Such a will is valid in this state.

By sec. 11, ch. 84, R. S., express trusts are allowed to be created for various purposes therein named, including (subd. 5) "for the beneficial interest of any person or persons, when such trust is fully expressed," etc. This subdivision is not found in the statutes of N. Y. Sec. 14 provides that when an express trust shall be created *for any purpose* not enumerated in the statute, "no estate shall vest in the trustees, but the trust, if directing or authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers" contained in ch. 85, R. S. By the provisions of ch. 85, R. S., the power here defined may be granted by will (sec. 34, subd. 2); and, its execution not being made to depend expressly on the will of the grantee, it "is *imperative*, and imposes a duty on the grantee, the performance of which may be compelled by action for the benefit of the parties interested" (sec. 24). Upon the death of the donee of the power, it does not descend to his heirs nor pass to his personal representatives, but, if unexecuted, passes to the circuit court, and is to be executed by some person appointed for that purpose, under the direction of the court. Sec. 30, ch. 85, compared with secs. 22–27, ch. 84. And when the testator by whose

will such a power is created, has omitted to designate the person who shall execute it, its execution devolves upon the circuit court. Ch. 85, sec. 29. In this case there was a power to sell real estate and use the proceeds for the benefit of a specified class of persons. The direction to sell, being imperative, worked an absolute conversion of the realty into personalty; and the respondent, in the case of a mere naked power, would take the title to such personalty as executor. R. S., ch. 85, sec. 24; *Kane v. Gott*, 24 Wend., 641; *Arnold v. Gilbert*, 5 Barb., 190; *Fletcher v. Ashburner*, 1 L. C. in Eq., and notes. In cases of intestacy, where land has been directed to be converted into money, the money goes to the personal representatives, the heir taking the legal estate subject to the exercise of the power. *Ashley v. Palmer*, 1 Mer., 296; *Burton v. Hodsoll*, 2 Sim., 24; *Biggs v. Andrews*, 5 id., 424; *Elliott v. Fisher*, 12 id., 505; *Griffith v. Ricketts*, 7 Hare, 299; *Hardey v. Hawkshaw*, 12 Beav., 552; *Craig v. Leslie*, 3 Wheat., 564; *Rinehart v. Harrison's Ex'rs*, Bald., 177, 187; 1 L. C. in Eq., 802. Such personalty *vested in the respondent* as *trustee* for the purposes of an *active* trust, enforceable as a power in trust. After obtaining title as executor, he was to retain it for the benefit of the orphans. Perpetuity of use is implied in the strongest manner, and the trust imposed was one of personal confidence. To use the fund for the purpose defined did not fall within the scope of executorial duty. *Beekman v. Bonsor*, 23 N. Y., 302–306. And where a trustee is required to do something that requires a legal estate or ownership of some kind, the courts, *by construction*, imply such an estate in him. *Neilson v. Lagow*, 12 How. (U. S.), 98; *Webster v. Cooper*, 14 id., 499; *Ward v. Amory*, 1 Curtis C. C., 427; *Oates v. Cooke*, 3 Burr., 1684; *S. C.*, 1 W. Black., 543; *Doe v. Woodhouse*, 4 Term, 89; *Doe v. Simpson*, 5 East, 162; *Doe v. Homfray*, 6 Ad. & El., 206. We have, then, in this case, a trust, or a power in trust, whose execution is imperative, and title in respondent to the person-

alty (when the property is converted into personalty) sufficient to answer the purposes of the trust (*Brown v. Higgs*, 8 Ves., 574; *Godolphin v. Godolphin*, 1 Ves. Sr., 23; *Greenough v. Welles*, 10 Cush., 576; *Gibbs v. Marsh*, 2 Met., 243, 251); we have a certain and competent trustee, viz., the respondent in his private and individual, and not in his ecclesiastical capacity (*Inglis v. Trustees*, 3 Peters, 114); and we have a definite and certain *subject* of the trust, viz., all the testator's property, after paying his debts, etc. If, then, the *object* of the trust is sufficiently certain, we have every element essential to sustain the will.

The object of the trust is a public one for the benefit of a certain defined class, the number and members of which are indeterminate, but each member of which can be practically ascertained and identified. The provision is good by well settled rules of equity independent of the general doctrine on the subject of charitable uses, as recognized in the statute, 43 Eliz. The object is a *charitable* one. *Perin v. Carey*, 24 How. (U. S.), 506; *Coggeshall v. Pelton*, 7 Johns. Ch., 294; *Jackson v. Phillips*, 14 Allen, 556; *Saltonstall v. Sanders*, 11 id., 446; *Urmey's Ex'rs v. Wooden*, 1 Ohio St., 161; *Miller v. Rowan*, 5 Cl. & Fin., 99; *Attorney Gen. v. Comber*, 2 Sim. & Stu., 93; *Cook v. Duckenfield*, 2 Atk., 562–569; *Powell v. Attorney Gen.*, 3 Mer., 48; *Attorney Gen. v. Speed*, West Ch., 491. It is no objection that the class described as beneficiaries is changeable in its membership. *Holmes v. Mead*, 52 N. Y., 332, 343, and cases already cited. It is immaterial how indefinite and vague the *cestuis que trust* or beneficiaries of a charitable trust are, provided there is a legal mode of rendering them certain by means of trustees appointed or to be appointed. *McLain v. School Directors*, 51 Pa. St., 196; *Zeisweiss v. James*, 63 id., 465. The fact that the precise method of employing the testator's bounty for the benefit of the beneficiaries is not defined by the will, is immaterial. A discretionary power may be conferred on

trustees either expressly or by implication from the nature of the duties imposed on them. Hill on Trustees, § 485; *Wilkinson v. Malin*, 2 Tyrw., 570. See also *Inglis v. Trustees, etc.*, and *Perin v. Carey, supra*. And it would not do to say that the beneficiaries are unlimited because "the Roman Catholic orphans," named in the *second* clause of the will, are those of the whole world; since the phrase, "*the* Roman Catholic orphans," in that clause evidently refers to those previously described, i. e., those "of the diocese of La Crosse." Nor will it do to say that there are orphans and half orphans, and, therefore, an uncertainty. Courts have already met and dealt with such questions. *Attorney Gen. v. Comber*, and *Powell v. Attorney Gen., supra; Soohan v. Philadelphia*, 33 Pa. St., 9. The beneficiaries, then, can be clearly ascertained and identified in this case, and every element of certainty is present that is required, even in a mere private trust. But viewing it as a public and charitable trust, certainty in this last respect is not necessary. The will would, therefore, be good even in New York, the doctrine of *Levy v. Levy*, 33 N. Y., being in conflict not only with the previous cases of *Williams v. Williams, Owens v. The Missionary Society, Downing v. Marshall* and *Beekman v. Bonsor*, but also with *Holmes v. Mead*, 52 N. Y., 343, 344.

II. It being clearly the intention of the testator to devote his property to a use charitable within the estimation of courts of equity, those courts, *in the exercise of powers strictly judicial*, will support that disposition, according to the doctrines *established before* the statute 43 Eliz., and *recognized in it.* Perry on Trusts, §§ 694–5, pp. 634, note 2, and 631, note 4; Willard's Eq., 571 et seq.; 2 Story's Eq., § 1162; *Vidal v. Girard's Ex'rs*, 2 How. (U. S.), 127; *Perin v. Carey*, 24 id., 465, 497, 501, 506; *Williams v. Williams*, 8 N. Y., 533; *Jackson v. Phillips*, 14 Allen, 558; *Urmey's Ex'rs v. Wooden*, 10 Ohio St., 160; *Witman v. Lex*, 17 Serg. & R., 88. These

cases, and many others in twenty-three of the states, show that courts of equity, where not prohibited by statute, exercise jurisdiction over charities, applying to them the rules of equity with such other rules as are applicable under the constitutions and laws of their several states; and that they do this *by virtue of their inherent equity powers*, without reference to the question whether the statute of 43 Eliz. has been technically in force in their states. The statute or the doctrines and principles recognized by it are in force in this country as a part of the common law. *Going v. Emery*, 16 Pick., 107; *Treat's Appeal*, 30 Conn., 113; *Beal v. Fox's Ex'rs*, 4 Ga., 404; *Walker v. Walker*, 25 id., 420; *Williams v. Pearson*, 38 Ala., 299; *Gilman v. Hamilton*, 16 Ill., 225; *Tappan v. Deblois*, 45 Me., 122; *Aid Society v. Rich*, id., 552; *Howard v. Am. Peace Society*, 49 id., 288: *Chapin v. School Dist.*, 35 N. H., 445; *McCord v. Ochiltree*, 8 Blackf., 15; *Indianapolis v. Grand Master*, 25 Ind., 518; *Wade v. Am. Col. Soc.*, 7 Sm. & M., 663; *State v. Prewett*, 20 Mo., 165; *Chambers v. St. Louis*, 29 id., 543; *Witman v. Lex*, 17 Serg. & R., 88; *McLain v. School Directors*, 51 Pa. St., 196; *Attorney Gen. v. Jolly*, 1 Rich. Eq., 99; 8 id., 190; *Franklin v. Armfield*, 2 Sneed, 305; *Dickson v. Montgomery*, 1 Swan, 348; *Burr v. Smith*, 7 Vt., 241; *Hopkins v. Upshur*, 20 Texas, 89; *Paschal v. Acklin*, 27 id., 173; Perry on Trusts, § 694 and p. 639; Story's Eq. Jur., § 1154 d. And the statute referred to, or the principles therein recognized, are not affected here by the subsequent statute of mortmain, 9 Geo. II, ch. 36. Only such British statutes as were in force in the colonies at the close of the revolution, and as were adapted to the circumstances of the country, were adopted in this country as a part of the common law. *Coburn v. Harvey*, 18 Wis., 147; *Kellogg v. Railway Co.*, 26 id., 272; *Spaulding v. Railway Co.*, 30 id., 110. The act of Geo. II was purely an English statute, never in force in Scotland, Ireland or any of the colonies. *Attorney Gen. v. Stewart*, 2 Mer., 143;

*Whicker v. Hume*, 14 Beav., 509; *S. C.*, 1 De Gex, M. & G., 506; *S. C.*, 7 House of Lords Cases, 124; Redfield on Wills, part 2, 790; *Beall v. Fox*, 4 Ga., 404; *Potter v. Thornton*, 7 R. I., 252; *Perin v. Carey*, 24 How., 465.

Counsel further contended that the true distinction between the proper *judicial* power of chancery over charitable trusts and the power of the chancellor as keeper of the royal conscience and acting under the sign manual of the king, was plainly laid down in the leading case of *Moggridge v. Thackwell*, 7 Ves., 36 (affirmed by the House of Lords on appeal, 13 id., 416), as follows: "Where there is a general indefinite purpose, not fixing itself upon any object, the disposition is in the king, by sign manual; but when the execution is to be *by a trustee*, with *general* or *some* objects pointed out, there the court will take the administration of the trust." All the authorities show that there is a wide distinction between a gift to a *charity* and a gift to a *trustee* to be by *him* applied to charity. In the first case the court has only to give the fund to charitable institutions, which is a ministerial or prerogative act; in the second case the court has jurisdiction over the trustee, as it has over all trustees, to see that he does not commit a breach of the trust. "The courts in America have generally declined, in the absence of legislative authority, to administer these indefinite gifts to charity, or religion, or public utility, *unless there was a trustee* appointed by the testator to exercise his discretion in applying the gift to particular objects or persons." Perry on Trusts, § 719. And *Morice v. The Bishop of Durham*, 9 Ves., 399, and 10 id., 521, 540, is in harmony with this view. Redf. on Wills, part 2, 830. "The ordinary judicial powers of courts of equity, applied properly to the subject matter, are sufficient to carry into effect almost all charitable bequests;" and the doctrine of *cy pres*, reduced to its elements, "becomes a very simple judicial rule of construction, and as such courts in all the states can and do apply it without usurping any preroga-

tive power." Perry, § 728. *Moggridge v. Thackwell* was a case under the ordinary judicial power of the court, and a scheme was proposed. The books abound in such cases. See Redfield on Wills, part 2, 815–818; *Attorney Gen. v. Gladstone*, 13 Sim., 7; *Reeve v. Attorney Gen.*, 3 Hare, 191. In *Walsh v. Gladstone*, 1 Phil., 290, the fund was ordered to be paid over, without directing a scheme. See also *Jackson v. Phillips*, *Going v. Emery*, *Dickson v. Montgomery* and *Attorney Gen. v. Jolly*, *supra; Gilman v. Hamilton*, 16 Ill., 231; *Curling v. Curling*, 8 Dana, 38; *Moore v. Moore*, 4 id., 354, 366; *Gass v. Wilhite*, 2 id., 170; *Harvard College Case*, 3 Gray, 283; *City of Phil. v. Girard*, 45 Pa. St., 27, 28; *Evangelical Association Appeal*, 35 id., 316.

Counsel further argued that the statute of this state does not abolish or prohibit charitable trusts, or deprive courts of equity here from exercising the same jurisdiction over them as was exercised, as a matter of *purely judicial* cognizance, by the English chancery. It abolishes all mere *passive* trusts, retaining certain active trusts; and while all other active trusts are abolished as trusts, they are retained as powers in trust. If the general language of sec. 1, ch. 84, extends to all active trusts, whether charitable or not (as held in *Levy v. Levy* and *Bascom v. Albertson, supra*), the language of sec. 11, subd. 5, and of sec. 14, is equally broad and comprehensive. It is clear, then, that active trusts for charitable uses are good when the trust is "fully expressed and clearly defined upon the face of the instrument," as required by sec. 11, subd. 5; and that where that element of certainty is wanting, such trusts are good by sec. 14 as powers in trust, if not limited upon an illegal suspension of the absolute power of alienation, and if the power is vested in a competent donee to take and exercise it. This is admitted even in *Levy v. Levy*, 33 N. Y., 135–6. A general power is declared to be in trust "when any person or *class of persons*, other than the grantee of such power, is designated as entitled to the proceeds, or

any portion of the proceeds, *or other benefits* to arise from the alienation of the lands according to the power." Ch. 85, sec. 22. The language, "class of persons" entitled to the "benefits to arise," etc., is the most appropriate possible to create a power in trust for affectuating a *public charity*, and is not appropriate to a power created for a mere private purpose. And we find in the condition of the law as to charitable uses, and the jurisdiction of courts of equity over them, as these existed when the statute was enacted, a subject matter in reference to which these provisions were adopted, and to which they are applicable. The irresistible inference is, that it was the intention of the framers of the statute to retain charitable trusts and execute them, under the name of powers, in accordance with the principles of law previously existing in reference to that subject. *Dominick v. Sayre*, 3 Duer, 555; *Downing v. Marshall*, 23 N. Y., 366.

Counsel further contended that the argument attempted to be derived from our statute against the creation of trusts in real property for charitable uses, has in no event any application to trusts for such uses in personal estate, or in real estate equitably converted into personalty, as this statute has no reference to trusts in personal estate. *Kane v. Gott*, 24 Wend., 661; *Downing v. Marshall, supra.*

Cole, J. In the case of *Ruth et al. v. Oberbrunner et al.*, decided at the present term, but in the decision of which the chief justice, having been of counsel, took no part, it was held that ch. 84, R. S., abolished all uses and trusts, including charitable uses and trusts, except such as were authorized by its provisions and constituted in the manner prescribed. This view would inevitably overthrow the devise and bequest in the will. But our decision in this case will not be placed upon the ground that the will is void under the statute of uses and trusts; for we think, without reference to that question, that it is impossible to sustain the devise under the gen-

eral principles of law applicable to charitable uses. It will be seen that the devise is *directly* " to the Roman Catholic orphans of the diocese of La Crosse," while power is given to the executor to sell the property " and use the proceeds for the benefit of the Roman Catholic orphans." Now, in whom does the fee of the real estate vest under the devise? Does it vest in the Roman Catholic orphans of the diocese, or in the executor, or where does it go ? It is suggested on the brief of the learned counsel for the plaintiff, that the testator did not intend that the fee should vest either in the orphans or in the executor; but this view would seem to be inconsistent with the power conferred. That power was authority *to sell* the property, which implies that the title might be transferred by some one to the purchaser when the contemplated sale should be made. But, not to dwell upon this point, we come to a more serious objection against the validity of the devise; and that is, the uncertainty as to who are the beneficiaries of the testator's bounty. Conceding that the last clause of the will is to be construed in connection with the previous clause, and that the fund was to be used by the executor for the benefit of the Roman Catholic orphans of the diocese of La Crosse, how is it possible to ascertain and determine what orphans were intended to be benefited? Are they whole orphans or half orphans? Are they orphans of parents both of whom were members of the Roman Catholic church, or will an orphan of a Roman Catholic father, or of a Roman Catholic mother, come within the designated class? Are the objects of this charity the full orphans or half orphans who were living within the diocese at the death of the testator, or will such of either class as may thereafter come into the diocese be entitled to take as beneficiaries? Again, upon what principle or in what manner is the fund created by the sale of the real estate to be expended? Is the executor or trustee to apportion it equally among the orphans of the diocese, when it is ascertained who are entitled to take, or is he to dispense it in his

discretion for the benefit of such orphans as he may select from time to time? These questions suggest the perplexity and difficulties which the court must encounter in establishing and carrying into effect this trust. It seems to us they are insuperable. For the testator has failed to declare his purpose, but has left his will so indefinite and vague upon all these material matters that a court, in order to execute the trust, is of necessity compelled to make a will for him. The words of COMSTOCK, Ch. J., in *Beekman v. Bonsor*, 23 N. Y., 298, may well be used: "Here is a fatal uncertainty both as to the subject and the object of the bequest." p. 306.

But to meet and answer these serious objections taken to the will, the counsel for the plaintiff cites and relies upon a line of adjudications which hold that, though the individual beneficiaries of a charity are left uncertain, yet when they are included in a definite class, the trust will be sustained and enforced by a court of equity. And he says, in order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number; in other words, that the persons to be benefited must be vague, uncertain and indefinite until they are selected or appointed to be the particular beneficiaries of the trust for the time being. But the doctrine of these cases will not aid the will, because the class here is not certain and well defined, nor is there any way provided for selecting the beneficiaries from a class. We have seen that the word "orphan" includes a minor who has lost both of his or her parents, or one who has lost only one. What meaning is to be given to it as used in the will, it is impossible to determine. So that, admitting the full authority of those cases which decide that when the individual beneficiaries under a will are left uncertain, but are included in a definite class, the bequest or devise for their benefit will be sustained, still the difficulty here presented remains. How are the particular orphans entitled to have the benefit of the devise to be ascertained and identified? Un-

der our construction of the will, there are no means by which this uncertainty can be rendered certain.

There are doubtless cases in which a devise or bequest to charity as vague and uncertain as the one we are considering has been sustained.    But these cases mainly rest upon the doctrine of *cy pres*, which is a doctrine of prerogative or sovereign function, and not strictly a judicial power.    4 Kent, 508; 2 Story's Eq. Jur., § 1169 et seq.; *Fontain v. Ravenel*, 17 How., 369; *White v. Fish*, 22 Conn., 31; *Jackson v. Phillips*, 14 Allen, 540–576; *Williams v. Williams*, 8 N. Y., 525–528; *Owens v. The Missionary Society*, 14 id., 380–403; *Beekman v. Bonsor*, 23 id., 310; *Levy v. Levy*, id., 97; *Bascom v. Albertson*, 34 id., 584.    It is not claimed that the courts of this state are clothed with other than strictly judicial power, or that they have succeeded to the jurisdiction over charities which the chancellor in England exercises by virtue of the royal prerogative and the *cy pres* power.    It is admitted that the intention of the testator is to control in administering charitable trusts.    But if that intention has been so vaguely and imperfectly expressed that the *cestui que trust* cannot be ascertained, the charity must fail.    In this case it is impossible to determine from the language of the will who are the objects of the testator's bounty.    There are no ascertainable beneficiaries, either as a class or individuals, and therefore the trust cannot be effectually carried out.    It is uncertain whether the word " orphan " applies to those children who have lost both parents, or whether it does not include as well those who have only lost one.    It is impossible to determine whether the testator intended to restrict his bounty to such of either or both classes as were residents of the diocese at the time of his death, or whether he intended the fund should be used as well for the benefit of any that might thereafter come to the diocese, or become orphans by the death of one or both resident parents. No power is given the trustee to select the individuals from any certain or defined class, so as to render " uncertainty cer-

tain, and relieve the devise and bequest from the objections arising out of its vague and indefinite character." It seems to us that a trust so wanting in all the elements of certainty and precision, cannot be enforced by a court acting only in the exercise of purely judicial power. And we think this conclusion is in harmony with the doctrine of the better considered authorities in this country which have passed upon the question. Many of them are cited upon the briefs of counsel, and require no comment.

The will being void, it follows that the heirs-at-law take the property.

The counsel for the plaintiff contended that the trust created by the will was valid as a power, and that the lands descended to the heirs or devisees, subject to the execution of this power, under sections 12, 14 and the subsequent sections of ch. 84. This might remove the difficulty in respect to the title, but does not overcome the objections that the trust is too indefinite to be capable of execution. In the case of *Dominick v. Sayre*, 3 Sandf. S. C., 555, to which we were referred on this point, the court adopts the maxim "that a power of disposition limited to a class in all cases implies and creates a trust, when the property which is given is certain, and the objects (that is, the persons) to whom it is given are also certain;" in other words, deciding that " where this certainty exists the trust arises." It is obvious that the principles of this decision can have no application to the case before us.

It results from these views that the judgment of the circuit court placing a construction upon the will, and giving directions to the executor as to the execution of the trust, is erroneous.

*By the Court.* — The judgment is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.