McHUGH and others, Appellants, vs. McCOLE, Executor, and others, Respondents.

SAME, Respondents, vs. McCOLE, Executor, imp., Appellant.

*May 1 — October 22, 1897.*

*Wills: Direction to sell realty: Equitable conversion: Cy pres: Legacies creating trusts, validity of.*

1. Where it is plainly the intent of the testator that, as to the legacies given by his will, it shall be executed in personalty exclusively,

McHugh and others vs. McCole and others.

the doctrine of equitable conversion will apply only to so much of the realty as is necessary to be sold to meet such legacies, and the court will deal with that as though it were personalty.

2. The doctrine of *cy pres*, whereby trust provisions of a will are executed as near to the presumed intention of the testator as may be, is not recognized or acted upon by the courts of this state.

3. In case a testator's plan or intention fails by reason of illegality, lapse, or other cause, an intention to convert realty into personalty will not be implied, but the property will retain its original character, and go to the heirs or next of kin.

4. In order that a trust created by will may be sustained as valid, it must be of such a clear and definite nature that the court can, in the exercise of its ordinary judicial functions, deal with and render its provisions effective, and there must be a beneficiary named, or capable of being ascertained within the rules of law, who can enforce it.

5. A bequest to the bishop of F, "to be used by him for the benefit and behoof of the P. E. church of F," creates a trust which is too indefinite to be executed, where the church named is not an incorporated body, nor a single body, but in fact consists of several churches and organizations, and no provision is made as to which church or what members are to participate in the testator's bounty.

6. A bequest of property "to be used" by the bishop of the diocese of G, "for the benefit and behoof of the Roman Catholic church," creates a trust which is too indefinite to be executed, since it is impossible to determine whether the entire Roman Catholic church or some particular church is the intended beneficiary.

7. A bequest to the Roman Catholic bishop of the diocese of G, "to be used and applied . . . for masses for the repose" of the testator's soul and the repose of the souls of certain other persons, is void, because it creates a trust without any beneficiaries competent to enforce it.

8. A direct legacy to a bishop or priest for masses for the repose of the souls of persons named in the will would be sustained as valid; but a bequest to the bishop of a certain diocese "to be used and applied . . . for masses for the repose of my soul," is not such a direct bequest, nor is it a valid personal bequest, but it is void for indefiniteness and uncertainty.

APPEALS from a judgment of the circuit court for Calumet county: GEO. W. BURNELL, Circuit Judge. *Affirmed in part; reversed in part.*

This action was brought by the heirs at law of one Owen McHugh, deceased, against *Patrick McCole*, executor of his last will and testament; *S. G. Messmer*, as bishop of the Roman Catholic diocese of Green Bay; *Bridget Carney;* *John O'Rourke*, and *Frank McGrath*, as trustees of the St. Augustine's Roman Catholic Church of Chilton, Calumet county, Wisconsin; *C. C. Grafton*, as the Protestant Episcopal bishop of Fond du Lac, Wisconsin; and the *Catholic Orphan Asylum* at Green Bay, Wisconsin,— to obtain the judgment of the court as to the intent, meaning, and legal effect of the will of said Owen McHugh, deceased, and especially with reference to the bequests and devises contained in paragraphs 4 to 7, inclusive; and to ascertain whether said provisions were void, and whether the persons named as legatees and devisees in said paragraphs take anything thereby, or are entitled to receive and take the several legacies and devises provided thereunder, and whether the executors of the deceased are entitled, under and by the terms of the will, to sell the lands of the deceased, and out of the proceeds thereof to pay said several sums to the persons therein named, as provided by the will, or whether said property should descend or pass to the heirs at law of the testator or his personal representatives for the benefit of his distributees.

It appeared that the executor refused to bring an action for these purposes, or to participate therein; that one of the heirs at law, *Bridget Carney*, refused to join as plaintiff, and was therefore made a defendant. The plaintiffs assert several grounds of invalidity or illegality in respect to the provisions in paragraphs 4 to 7 of the will, inclusive. It was alleged that the testator left personal property sufficient to pay his debts, together with his funeral expenses, but that *Patrick McCole*, the executor, applied to the county court of Calumet county for an order or license authorizing and empowering him to sell the real estate of the testator, and

to pay the proceeds over to the devisees and legatees mentioned in said will.

There were answers put in by the defendants, raising substantially the same issues, in which it is conceded that the executor, *Patrick McCole*, applied to the county court of Calumet county for the purpose aforesaid, and insisted upon the validity of all the paragraphs of the will numbered 4 to 7, inclusive, but denied that the testator left personal property sufficient to pay his debts and the cost of administration, and, except as expressly admitted, denied each and every allegation of the complaint.

The testator bequeathed $1,000 to his daughter *Bridget Carney*, $600 to his daughter *Hannah Daugherty*, and $300 to his grandson *Joseph Daugherty;* and the provisions of the fourth to the seventh paragraphs of the will, inclusive, are as follows, namely: (4) I do give and bequeath unto the Protestant Episcopal bishop of Fond du Lac, in the state of Wisconsin, the sum of $300, "*to be used by him for the benefit and behoof* of the Protestant Episcopal Church of said diocese of Fond du Lac, Wisconsin." (5) I do give and bequeath unto the Roman Catholic bishop of the diocese of Green Bay, Wisconsin, the sum of $4,150, the said sum "*to be used and applied* as follows: For masses for the repose of my soul, two thousand dollars; for masses for the repose of the soul of my deceased wife, Mary McHugh, the sum of one thousand dollars; for the repose of the soul of my deceased son, John McHugh, $500; for the repose of the soul of my deceased daughter, Katie McHugh, the sum of $100; for masses for the repose of the souls of my father and mother, Owen and Hannah McHugh, $50; for the *Catholic Orphan Asylum* at Green Bay, Wisconsin, the sum of $500." (6) I do give and bequeath unto the trustees of the Roman Catholic Church at Chilton, Calumet county, Wisconsin, to wit, St. Augustine Church, to be used for the benefit of said church, and in repairing the same, the sum of $500. (7) I

do give, grant, bequeath, and devise all the rest, residue, and remainder of my estate, real or personal, "to the Roman Catholic bishop of Green Bay, Wisconsin, *to be by him used for the benefit and behoof of the Roman Catholic Church.*"

Upon trial by the court it was found that the testator made his will with the provisions stated, and that it had been admitted to probate; that the defendant *C. C. Grafton* is the Protestant Episcopal bishop of Fond du Lac, in the state of Wisconsin; that *S. G. Messmer* is the Roman Catholic bishop of the diocese of Green Bay, Wisconsin, which said diocese includes the county of Calumet; that *St. Joseph's Orphan Asylum* of Green Bay is and was duly incorprated under the laws of the state of Wisconsin at the time of the making and publishing of said will, and was and is the only Catholic orphan asylum in said city; that the Roman Catholic bishop, the vicar general of the diocese of Green Bay, the pastor of the congregation of St. Augustine, together with *John O'Rourke* and *Frank McGrath*, are the trustees of St. Augustine's Church, Roman Catholic Church of Chilton.

The court, as conclusions of law, affirmed the validity of all the provisions of the will except the sixth paragraph and so much of the fifth paragraph as disposes of $3,650, to be used and applied for masses for the repose of the souls of the persons therein named; and judgment was rendered accordingly.

The plaintiffs appeal from that part of the judgment upholding the bequest to the Protestant Episcopal bishop of Fond du Lac of $300, and the provisions sustaining the seventh or residuary clause of the will, and ordering and adjudging the rest, residue, and remainder of the testator's estate to be assigned to *S. G. Messmer*, the Roman Catholic bishop of the diocese of Green Bay, *for the benefit and behoof of the Roman Catholic Church of his diocese.* There was a cross appeal by the defendant *Patrick McCole*, the executor of the testator, from so much of the judgment as declared

that part of the fifth paragraph of the will bequeathing $3,650, *to be used and applied for masses* as therein specified, void for indefiniteness and uncertainty, and from the failure of the court to render judgment in accordance with said bequest.

*J. E. McMullen*, attorney, and *L. J. Nash*, of counsel, for the plaintiffs.

For the defendants there was a brief by *Wigman & Martin*, and oral argument by *P. H. Martin*. They argued, *inter alia*, that the will showed the intention of the testator to be to disinherit those of his heirs not specially provided for, and to make a gift of a specified sum to the Protestant bishop of F. and of the remainder to the Catholic church, of which he was a member. His will is simple and certain, and effect should be given to his ascertained intent when it contravenes no law. The gifts are direct to the donee, one being to the trustees of a particular church, and the other to the bishop, who is *ex officio* trustee of the diocesan property. A gift to the trustees of a corporation is a gift to the corporation itself. Subd. 9*a*, sec. 2001*b*, S. & B. Ann. Stats.; *Heirs v. Vosburg*, 59 Wis. 533; *Mannix v. Purcell*, 46 Ohio St. 102; 15 Am. St. R. 562; *In re First Presb. Soc.* 106 N. Y. 251. The will created no trust. It contains no explicit declaration of trust, nor anything showing an intention to create one. *Beaver v. Beaver*, 117 N. Y. 421; *Ruppel v. Schlegel*, 55 Hun, 183; *Vanderveer v. McKane*, 11 N. Y. Supp. 808; *In re Howard's Estate*, 25 id. 111; *Seda v. Huble*, 75 Iowa, 429; *In re Backes' Will*, 30 N. Y. Supp. 394; *Matter of Hagenmeyer's Will*, 12 Abb. N. C. 432; 3 Am. & Eng. Ency. of Law, 131, note 4; *Elmsley v. Madden*, 18 Grant Ch. 386; *Comm'rs of Charitable Donations v. Walsh*, 7 Ir. Eq. 34; *Att'y Gen. v. Hall*, [1896] 2 Ir. Rep. 291; *Reed v. Hodgens*, 7 Ir. Eq. 17; *Hess v. Singles*, 114 Mass. 56. The bequest for masses was valid. It was intended as a gift, and not in any sense as a consideration. *Dodge v. Williams*, 46 Wis. 70; Cassoday,

McHugh and others vs. McCole and others.

Wills, §§ 594, 640. If that is void the sum designated falls into the *residuum* and does not go to the heir. 1 Jarman, Wills, 635; Hawkins, Wills, 44; Sec. 2279, S. & B. Ann. Stats.; *Smith v. Curtis*, 29 N. J. Law, 345; *Prescott v. Prescott*, 7 Met. 141; *In re Estate of Pierce*, 56 Wis. 560; *Scott v. West*, 63 id. 570; *Newman v. Waterman*, id. 616; *Hiles v. Atlee*, 90 id. 72; *Cruikshank .v. Home for the Friendless*, 113 N. Y. 337.

PINNEY, J. The record does not disclose how much of the testator's estate consisted of realty, or how much of personal property. It may be fairly assumed from the seventh or residuary clause of the will, disposing of "all the rest, residue, and remaider of the testator's estate, real or personal," to the Roman Catholic bishop of Green Bay, Wisconsin, "to be by him used for the benefit and behoof of the Roman Catholic Church," that the testator owned both real and personal estate, and that it was understood that there might be a residue or remainder of either real or personal estate not required for the payment of the legacies specified in the will. The will contemplates, as to the legacies therein named, that it should be executed in personalty exclusively, and that any residue of real estate which it might not be necessary to sell in order to pay said legacies should pass under the residuary clause in the will. It was plainly the intent of the testator that, for the purpose of satisfying said legacies, his executor should convert, if need be, all his real estate into money. If the said provisions of the will are valid, the doctrine of equitable conversion would apply to the extent that the provisions of said will may be valid; and the court would deal with the estate as personalty. *Dodge v. Williams*, 46 Wis. 97; *Webster v. Morris*, 66 Wis. 399. It will be seen upon an examination of the record that if a residue of realty remained unsold, the sale of which was not necessary for the payment of such bequests, the validity of

the will as a devise of such realty will be determined by principles involved in the determination of the validity of the bequests above stated. All the contested provisions of the will are essentially trust provisions, and appear to be void for uncertainty and wholly incapable of being executed by a court of equity by virtue of its judicial jurisdiction over private trusts. Unless they can be so executed, they must necessarily fail; for it is settled that the doctrine of *cy pres* — as it existed in England and as it has been applied in some of the states of the American Union, whereby trust provisions are administered and executed as near to the presumed intention of the donor or founder as may be — is not recognized or acted upon by the courts of this state as a part of the judicial power of the state. The doctrine rests upon a prerogative or sovereign power, is not strictly judicial in its nature, and consequently the courts of the state cannot exercise it. *Will of Fuller*, 75 Wis. 435; *Heiss v. Murphey*, 40 Wis. 276; *Ruth v. Oberbrunner*, 40 Wis. 238.

We are of opinion that the trust provisions in question are void for uncertainty, in that no certain and competent beneficiaries are named who may come into a court and claim and establish their right to the fund and to the execution of the trusts of the will; and no method has been prescribed or pointed out for the administration of the several funds or their application to the purposes of the supposed trusts. The testator has not fully defined his trust purposes, but has left them so indefinite that it is impossible for the court, in the exercise of its judicial functions, to administer them after the manner of private trusts, without in substance making a new will for the testator, or at least new and effective provisions to carry his supposed intentions into effect. *Will of Fuller*, 75 Wis. 435. In order that these trusts shall be sustained, they must be of such a clear and definite nature that the court can deal with them in the exercise of its ordinary judicial functions, and render them effective. *Web-*

*ster v. Morris*, 66 Wis. 366; *Heiss v. Murphey*, 40 Wis. 276; *Estate of Hoffen*, 70 Wis. 522. The position that the disputed trust provisions of this will are hopelessly indefinite and uncertain, for the reasons stated, is supported by very many recent and well-considered cases, and by arguments which we are compelled to regard as unanswerable. It was conceded by the learned counsel for the party seeking to maintain these several disputed provisions that, regarded as trusts, they must necessarily fail. That they are trust provisions, imposing active duties upon the trustee, does not, we think, upon a consideration of their terms, admit of doubt or question.

1. The bequest of $300 to the bishop of Fond du Lac, Wisconsin, is "*to be used* by him for the *benefit and behoof* of the Protestant Episcopal Church of Fond du Lac, Wisconsin." The Protestant Episcopal Church of the diocese of Fond du Lac is not, so far as we are advised, a body corporate or legal entity, capable in law of taking, claiming, or asserting any right in court to this fund, and could not, as against the personal representatives and distributees of the testator or donor, apply for and have it paid over. It consists, as we understand, of several churches or organizations, and there has been no selection, or provision for any, as to which of said churches, or what members of either of them, are to take or to participate in the donor's bounty, or to what extent, nor has there been authority conferred on any one to make such selection. In the absence of such provision the court will be powerless to make any such selection without any plan or scheme, *cy pres*, for the distribution of the funds.

2. The seventh or residuary clause of the will is of like character and subject to similar infirmities. The property to be affected by this provision is "*to be used*" by the Roman Catholic bishop of the diocese of Green Bay, "*for the benefit and behoof of the Roman Catholic Church.*" What church or body is thus designated or intended? Is it the Roman

Catholic Church in any particular city, state, or diocese? Certainly no such church is specified. Or does this designation include the Roman Catholic Church throughout the entire world? The difficulty — indeed, the utter impossibility — of dealing with and executing this provision as a valid trust is, we think, obvious and insuperable; and, within the authorities, this clause of the will must be regarded, for these reasons, as void and inoperative for any purpose, and utterly ineffective to pass any interest or estate whatever to the bishop of the Roman Catholic Church of the diocese of Green Bay. Manifestly, he could not take or derive thereunder any trust estate or interest which a court of equity could execute, protect, or enforce, for want of certain, competent, and definite beneficiaries of the trust. It is evident that no one of these trust provisions affecting the testator's real estate can be sustained under the statute in relation to uses and trusts. No one of them is for any one of the purposes specified in sec. 2081, R. S., for which express trusts in real estate may be created; and neither of them is so framed that it can be sustained as being "for the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it." Whatever residue, therefore, of real estate may remain after satisfying the valid bequests of the will, is undisposed of by it, and must go to the heirs at law of the testator. Failing the bequests in the fifth and seventh clauses in the will, the purpose of the conversion of real estate into personalty ceases, except as to the valid bequests. The case in this respect falls within the general principle that a power of sale, however peremptory in form, does not operate as a conversion in aid of a particular purpose of the testator where the testator's plan or purpose fails by reason of illegality, lapse, or other cause. In such event an intention to convert realty into personalty will not be implied, and the property retains its original character, and goes to

the heir or next of kin as real or personal estate, as the case may be. *Read v. Williams*, 125 N. Y. 571.

The bequest for the *Catholic Orphan Asylum* at Green Bay, Wisconsin, an incorporated body, was sustained, and is not in question on these appeals. That part of the judgment adjudging the bequest in the sixth clause of the will of $500 to the trustees of the Roman Catholic Church at Chilton, Calumet county, to wit, St. Augustine Church (to be used for the benefit of said church, and in repairing the same), void, does not appear to have been appealed from, and its validity is not now in question.

The trust provision in the fifth paragraph of the will, bequeathing $3,650, to be used and applied for masses as therein specified, is also void, for the reason that there is no beneficiary or beneficiaries of the trust who may come into equity and enforce performance. It is evident that such a trust is not capable of execution, and no court could take cognizance of any question in respect to it for want of a competent party to raise and litigate any question of abuse or perversion of the trust. Although the testator has used language ordinarily used for the declaration of a trust, it is argued that the court cannot impute to him the intention of creating a trust simply for the sake of subsequently condemning it. It is the duty of the court to declare the construction and meaning of this clause of the will, and then to determine whether it is in conformity with the law. Where the language is plain and unambiguous, we are not permitted to wrest it from its natural import, in order to save a provision from condemnation. *Cottman v. Grace*, 112 N. Y. 309. The court is still bound to give judgment upon the essential character of the instrument, according to its true legal effect and meaning. In *Ford v. Ford*, 70 Wis. 21, a trust was held to exist under the provisions of a will as a matter of construction, and yet the court declared it void as to a part of the property affected by it. It is a well-settled rule that, where

a trust fails for indefiniteness or uncertainty, the representatives or distributees of the donor will prevail over the claimant under the trust. *Levy v. Levy,* 33 N. Y. 107; *Holland v. Alcock,* 108 N. Y. 313. In the case last cited, the will of G. bequeathed his residuary estate, which consisted exclusively of personalty, to his executors, in trust for the purposes expressed therein, as follows: "To be applied by them for the purpose of having prayers offered in a Roman Catholic church, to be by them selected, for the repose of my soul and the souls of my family, and also the souls of all others who may be in purgatory." It was held that the trust so attempted to be created was invalid; and that, as to such residuary estate, the testator died intestate, and the next of kin of the testator were entitled thereto, as there was no beneficiary in existence, or to come into existence, who was interested in or who could demand the execution of the trust.

In *Holland v. Alcock, supra,* it was said: "When a trust is attempted to be created without any beneficiary entitled to demand its enforcement, the trustee would, if the trust property were in his possession, have the power to hold it to his own use, without accountability to any one, and contrary to the intention of the donor, but for the principle that in such a case a resulting trust attaches in favor of whoever would, but for the alleged trust, be equitably entitled to the property. This equitable title cannot, on any sound principle, be made to depend upon the exercise by the trustee of an election whether he will or will not execute the alleged trust. In such a case there is no trust, in the sense in which the term is used in jurisprudence. There is simply an honorary and imperfect obligation to carry out the wishes of the donor, which the alleged trustee cannot be compelled to perform, and which he has no right to perform, according to the wishes of those legally or equitably entitled to the property, or who have succeeded to the title

of the original donor.   The existence of a valid trust capable of enforcement is consequently essential to enable one claiming to hold as trustee to withhold the property from the legal representatives of the alleged donor.   A merely nominal trust, in the performance of which no ascertainable person has any interest and which is to be performed or not as the person to whom the money is given thinks fit, has never been held to be sufficient for that purpose." In *Levy v. Levy, supra,* WRIGHT, J., said that, "if there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void." *Prichard v. Thompson,* 95 N. Y. 76.   And in *Fosdick v. Hempstead,* 125 N. Y. 589, it was held that, to constitute a valid testamentary trust, there must be a defined beneficiary either named or capable of being ascertained, within the rules of law applicable in such cases.   The beneficiaries under these disputed trust provisions are neither named nor capable of being ascertained, within the rules of law applicable to such cases.

The elaborate decision in the case of *Holland v. Alcock,* 108 N. Y. 312, would seem to be decisive of the trust for masses; nor is it supported by the case of *Power v. Cassidy,* 79 N. Y. 602, as explained in *People v. Powers,* 147 N. Y. 104.   In *Holland v. Alcock, supra,* it was contended that the disposition in question contained all the elements of a valid trust of personal property; that there were definite and competent trustees; that the purpose of the trust was lawful, and it was sufficiently defined to be capable of being enforced by a court of equity, as the court could decree the payment of the legacies for the purposes directed by the will.   But to this contention the court responded that, if all this should be conceded, there is still one more important element lacking.   There is no beneficiary in existence, or to come into existence, who is interested in or

can demand the execution of the trust. No defined or ascertainable living person has, or ever can have, any temporal interest in its performance; nor is any incorporated church designated, so as to entitle it to claim any portion of the fund. The absence of a defined beneficiary is, as a general rule, a fatal objection to any attempt to create a valid trust. In *Read v. Williams*, 125 N. Y. 560, the bequest was to such charitable institutions and in such proportions as the executors, by and with the advice of the testatrix's friend, Rev. John Hall, D. D., should choose and designate. After the death of the testatrix, the executors, with the advice and approval of Dr. Hall, made a written designation of certain incorporated charitable institutions; but it was held, under the language used, a charitable institution was not capable of taking, and that it was not such a trust as could be carried into execution by the court; and it was therefore held void. In *Fosdick v. Hempstead* the bequest was to the town, to keep as a fund for the support of the poor of the town; and it was held that the bequest was indefinite and invalid, for the want of an ascertained beneficiary, the "poor of the town" being too general; and it was said that, applying the rule to these cases, it appears that the conclusion is inevitable that the trust attempted to be created is unenforceable, for the reason of a failure to designate the beneficiary, or to designate or describe a class or kind of beneficiary, to whom distribution is practicable, or that could with reasonable certainty be identified and ascertained. These considerations and authorities sustain as well the proposition that the residuary clause of the will relied on is clearly invalid and inoperative.

3. In support of the cross appeal of the executor from so much of the judgment as declares that part of the fifth paragraph of the will bequeathing $3,650, to be used and applied for masses as therein specified, void for indefiniteness and uncertainty, it was contended that this provision was not in

fact valid as a trust, but that it was a valid bequest of that sum personally to the bishop of the diocese, and that there was no limitation of this bequest in his hands; that it was his to use and enjoy as he chose; that he might burn it up the moment received, and his doing so would not impair in any degree his ability to execute the testator's wish; that it was not named as a consideration for the masses; and that the bishop could as well perform the service without as with it. It was also contended "that this gift was absolute to the church." We know of no legal reason why any person of the Catholic faith, believing in the efficacy of masses, may not make a direct gift or bequest to any bishop or priest of any sum out of his property or estate for masses for the repose of his soul or the souls of others, as he may choose. Such gifts or bequests, when made in clear, direct, and legal form, should be upheld; and they are not to be considered as impeachable or invalid, under the rule that prevailed in England, by which they were there held void, as gifts to superstitious uses. No such rule or principle obtains here. Had the testator made a plain, direct bequest of the sum in question to *Bishop Messmer*, or to any bishop or priest, for masses for the repose of the souls of the persons named in his will in that behalf, it would certainly be our duty to declare it valid, and give full effect to it. It is a matter of regret when a will or other disposition of property is so framed that effect cannot be legally given to what may well be supposed to have been the intention of the testator or donor; but the law, for wise and just reasons of public policy, has established rules and has made provisions in these respects that may not be disregarded. The true interests of society are best subserved in all such cases by faithfully following the law made to regulate and protect the interests of all alike; and it is the duty of courts in all such cases to adhere to it, and uphold its salutary provisions and principles.

As has already been said, we are clearly of the opinion

McHugh and others vs. McCole and others.

that the fifth clause of the will is essentially a trust provis-
ion. There is no foundation in the language used for the
contention that this clause operates as a bequest in favor of
any church or person. We are to give full force and effect
to the language of the testator, and this, in the strongest
and clearest terms, excludes the contention of the counsel
for the bishop. It does not give or bequeath to *S. G. Mess-
mer*, in his personal right or individual capacity, any sum
whatever for masses or other purpose. The position of the
parties and the relations between them seem to repel any
such intention to bestow the sum named as a personal be-
quest. The express language of the will is that it is given
"*to be used and applied* as follows: For masses for the re-
pose of," etc. This language is the proper and appropriate
language quite universally used to create trust provisions of
an active character in wills and other instruments. It ex-
cludes the idea of personal interest on the part of the donee
of the fund, or any authority to make a personal use and
application of it. It would be a most unwarranted construc-
tion, we think, to place upon this provision, to hold that lan-
guage imposing a mere matter of duty — to use and apply
a fund for a particular purpose — should operate by way of
gift to the person upon whom the instrument imposed the
duty. The bequest is not to any church, nor to *Bishop Mess-
mer*. It was not designed to include him personally, because
it could not be known that upon the occurrence of the death
of the testator, by which the will would become operative,
he would be bishop, so as to answer the description in the
will. A similar contention — whether a trust provision, in-
valid as such, might be considered a direct bequest — was
decided in *Festorazzi v. St. Joseph Roman Catholic Church*
(Ala.), 25 L. R. A. 360, in the note to which the cases
bearing upon this question appear to have been fully col-
lected. The clauses of the will there in question were sub-
stantially the same as in the case at bar: "I give and

bequeath to the Roman Catholic Cathedral in the city of Mobile the sum of $3,000, *the same to be used in solemn masses for the repose of my soul;* " and, " I give' and bequeath to the Roman Catholic Church of St. Joseph in the city of Mobile the sum of $2,000, also *to. be used in solemn masses for the repose of my soul.*"   And it was held that the provisions could not be considered a direct bequest to the church for its general use, and that the form of the bequest repelled the idea that a gift to the church for its general use was intended. The court said: " The bequest is to the church, 'to be used in solemn masses for the repose of my soul.'   Similar bequests have been many times before the courts in England and this country, and in all the cases, so far as our research extends, they were treated as having the form and nature of the declaration of a use or trust, and not as direct gifts to, and for the general uses of, the church.   An application of the fund to other uses than securing masses to be said for the repose of the donor's soul would contravene the intent and purpose of the testator; " that the . authorities, whether English or American, are potent to show that they partake of the nature of trusts, and cannot be treated as gifts to the churches themselves.   And it was said that the trust was not valid as a private trust, for the want of a living beneficiary; that a trust in form, of which no one could enjoy or enforce the use, is no trust, and that argument was unnecessary to show that there was no imaginable being possessing power to enforce the use declared in the bequest; that the executor could not, because he succeeds only to the right of the testator; and if the church should receive this bequest, and apply it to paying its debts or supporting its priests, the purpose would be clearly violated.   But what living person is authorized to call the trustee to account for the misuse of the fund?   If a trust for a specific purpose fails by the failure of the purpose, the property reverts to the donor or his heirs; and if the gift is made upon a trust

McHugh and others vs. McCole and others.

insufficiently or ineffectually declared, as if it is too indefinite, vague, and uncertain to be carried into effect, the gift will revert to the settler, his heirs or representatives. And it seems to be well settled that, where a gift is made upon trusts that are void in whole or in part for illegality, a trust will result to the donor, his heirs or legal representatives, if the property is not otherwise disposed of; and the donee will take in trust for the donor or his heirs or representatives. The case of *Rhymer's Appeal*, 93 Pa. St. 142–145, is an authority to show that the provision in question was a trust provision, and not a bequest by which the parties named were intended to take beneficially. We hold that the disputed trust provisions of the will of the testator are void trusts, and are not valid personal bequests.

It follows from these views that so much of the judgment appealed from by the plaintiffs as adjudges that the deceased, Owen McHugh, disposed of $300 of his estate to the defendant *C. C. Grafton*, Protestant Episcopal bishop of Fond du Lac, and so much thereof as orders and adjudges that the rest, residue, and remainder of the estate of said deceased be assigned to *S. G. Messmer*, Roman Catholic bishop of Green Bay, for the benefit and behoof of the Roman Catholic Church of said diocese, be reversed; and that so much of the judgment appealed from by *Patrick McCole*, executor of the deceased, as declares that part of the fifth paragraph of the will of the testator bequeathing $3,650 to be used for masses as therein specified void for indefiniteness and uncertainty, be affirmed. The costs of the respective parties, to be allowed and adjusted by the judge of the county court, are to be paid out of the estate of the testator.

*By the Court.*— It is ordered accordingly.