Wright, J.
The question at issue is .as to the validity *84 of the bequest to the treasurer of the American Bible Society and others, as set forth in item second of the will. The court of common pleas seems to have held that it was-a bequest in trust, and, as such, was void for uncertainty.
The alleged uncertainty is said .to exist in this. In the opinion of men, the modes and methods of advancing the kingdom of Christ are as various as the numerous sects-ostensibly engaged in accomplishing that object. While all are busy in the work, no two agree how it shall be done. Methodist, Episcopalian, Baptist, Presbyterian, all have their different opinions as to the matter which seems to-have been contemplated by the testator.
That it is not within the province of a court of equity to decide between such conflicting claims will be at once conceded, and if the validity of this bequest depended upon the solution of questions such as these, the difficulty of sustaining the will becomes apparent.
If this instrument devised property to a named trustee, “ to be used for the interest of religion and the advancement of Christ’s kingdom in the world,” it would perhaps be impossible to sustain such a disposition under the law of devises to charitable uses. In what has been called by courts the “ wilderness of cases’” upon this subject, we find that a bequest of this kind must be cei’tain.
In Chamberlain v. Stearns, 111 Mass. 267, a devise for “ benevolent ” purposes was held void, because too general in its meaning. ‘ In Holland v. Peck, 2 Iredell Eq. 255, executors were directed to “ pay over and deliver . . . for the .benefit of the Methodist Episcopal Church in America,” . . . the sum of $5,000, “ to be disposed of by conference, or the different members composing the same, as they, shall in their godly wisdom judge will be most expedient or beneficial for the increase or prosperity of the gospel.” It was held: “ The object of the bequest being of so indefinite a nature that the court can not determine how it should be employed, the same is void.”
In Wisconsin the statute with regard to trusts to uses provides that the trust must be “ fully expressed and clearly *85 ■defined on tbe face of the instrument creating it,” which is merely declaratory of the existing law on the subject. In that state the case of Ruth v. Oberbrunner, 40 Wis. 238, holds that a devise of land to A. & B., “ to hold the same ■in trust for the use and benefit of the Order of St. Dominican and St. Catharine’s Eemale Academy, and for no other purpose,” can not be sustained for want of certainty.
In Heiss, Ex’r v. Murphy, 40 Wis. 276, a will devising property “ to the Roman Catholic orphans ” of a certain diocese, with a further provision appointing the Roman 'Catholic bishop executor, and giving him “ power to sell .the above property and use the proceeds for the benefit of the Roman Catholic orphans,” was held void for uncertainty in the description of the beneficiaries, the class not being sufficiently defined, and no way being provided for selecting the individual beneficiaries from any class.
The court thus illustrate the uncertainty, which they hold to invalidate the devise : “ Conceding that the fund was to be used by the executor for the benefit of the Roman Catholic orphans of the diocese of La Crosse, how is it possible to ascertain and determine what orphans were intended to be benefited ? Are they whole orphans or half orphans ? Are they orphans of parents both of whom were members of the Roman Catholic church, or will an orphan of a Roman Catholic father, or of a Roman Catholic mother, come within the designated class ? Are the .objects of this charity the full orphans of half orphans who were living within the diocese at the death of the testator, or will such of either class as may thereafter come into the diocese be entitled to take as beneficiaries ? Again, upon what principle or in what manner is the fund created by the sale of the real estate to be expended ? Is the ex•ecutor or trustee to apportion it equally among the orphans •of the diocese when it is ascertained who are entitled to •take, or is he to dispense .it in his discretion for the benefit of such orphans as he may select from time to time ? These questions suggest the perplexity which the court must encounter in carrying into effect this trust. It seems *86 to us they are insuperable. Eor the testator has failed to declare his purpose, but has left his will so indefinite and vague upon all those material matters that a court, in order to execute the trust, is of necessity compelled to make a will for him. The words of Comstock, Ch. J., in Beekman v. Bowser, 23 N. Y. 298, may well be used: ‘ Here is a fatal uncertainty both as to the subject and object of the-bequest.’ ” (Page 306.)
The opinion in Grimes’ Ex’r v. Harmar, 35 Ind. 198, is able and learned. "We quote part of the syllabus :
“ The residuary clause of a will was as follows : ‘ Item. I give and bequeath the residue of my estate, after the foregoing bequests have been fully paid to the orthodox Protestant clergymen of Delphi, and their successors, to be expended in the education of colored children, both male and female, in such way and manner as they may deem best, of which a majority of them shall determine.’ In a suit by the heirs at law against the executors to recover the residuary estate:
“jGeld (1), that the residuary clause was void for vagueness and uncertainty in the designation of the trustees and of the beneficiaries of the use; and (2) that a court of equity had not the power to decree its execution cy pres.”
In this case the court say: “ Can the trustees execute the trust ? Are the beneficiaries so described that they can be ascertained ? And if they can be ascertained, is there-any plan or scheme devised by the testator directing-the manner in which and the purposes for which the-money was to be expended ? And if there is no plan or scheme, is there a discretion vested in the trustees authorizing them to select tire beneficiaries and determine the-manner in which the trust should be executed ? The beneficiaries are not designated except by the general vague and sweeping expression, ‘ colored children, both male and female.’ ”
After stating that the class thus specified number about four millions, the court proceeds to say: “ It will be observed that no scheme or plan, such as the foundation of' *87 a college, a seminary of learning, or a theological institute is prescribed. The character of the education to be given —whether moral, religious, literary, or scientific — is not-prescribed. The purpose expressed is to promote the moral and religious improvement and well-being of the colored race by educating the colored children, both male and female, but the particular kind of education is not prescribed. It would be impracticable to distribute the fund ratably among the beneficiaries. There is no power or discretion lodged in any person, natural or artificial, to select the beneficiaries from the mass of children of the African race in this country. Can the courts, in the exercise of their functions, select the beneficiaries ? If neither the trustees nor the courts can select the beneficiaries, is not the residuary devise and bequest void for uncertainty?” See also Holmes v. Mead, 52 N. Y. 332.
These illustrations are given to show the kind of devises- or bequests that are held void by courts, and it is necessary to consider whether the bequest before us is of this character, and whether it is amenable to the objections that have been urged against it.
In our opinion, the only rule necessary to be considered in this connection is that familiar one — that in construing a will we must endeavor to discover the intention of the testator. In the first place, it is seen that he had already created a trust. That trust was to last-during the lives of his parents. They being dead, he says it is his will that the trust shall cease. “ It is my will and desire that upon the death of both my said parents the trust shall expire,, and my said trustee shall distribute the fund.” The distribution is two thousand dollars to his sisters, and three-thousand dollars to the various societies. It is therefore apparent that he intended all trusts with relation to this money to cease when distribution was made. The ■ two sisters certainly hold their two thousand dollars clear of any complications of trust, and the same course of reasoning shows that the recipients of the three thousand dollars must hold their money free of any trust, at least so- *88 far as any trust is created by the will. If the money is taken by the societies subject to any trust at all, it is only such as exists by vii-tue of the objects and purposes of the society itself. All the means, of the societies are devoted to the uses for which the societies are formed, and are thus, in a certain sense, held in trust to' accomplish those uses.
The next clause to be considered is this: “As to the remaining sum of three thousand dollars, the balance of said trust fund, my said trustee is directed to apply the same so that it may be used for the interest of religion, and the advancement of the kingdom of Christ in the world, as follows, to wit: He shall pay to the treasurer of the American Tract Society the sum of one thousand dollars ; to the treasurer of the American Bible Society the sum of five hundred dollars; to the treasurer of the society known as the American and Foreign Christian Union the sum of five hundred dollars; to the treasurer of ■of the American Home Missionary Society the sum of one thousand dollars.”
It seems to us, the intention of the will may be made clear, by reading the above clause thus: As to the remaining sum of three thousand dollars, the balance of said trust fund, my said trustee is directed to apply the same so that it may be used for the interests of religion, and for the advancement of the kingdom of Christ in the world by paying to ■the treasurer of the American Tract Society one thousand .dollars; to the treasurer of. the American Bible Society the sum of five hundred dollars; to the treasurer of the -society known as the American and Foreign Christian Union the sum of five hundred dollars; and to the treasurer of the American Home Missionary Society the sum ■of one thousand dollars.
The testator conceives a scheme for advancing Christ’s kingdom in the world. He carries out that scheme by directing the money to be paid to these various societies. As soon as the money arrives at their treasuries, that .■scheme is accomplished. His will is fullfilled. No discre *89 tion is left to anyone how this scheme shall be carried out. He has settled all that for himself. He knows that these .societies are doing that which he wishes, and that to achieve which this bequest is made. He knows that they are engaged in the work of advancing Christ’s kingdom. It is not to the purpose that anyone else may have doubts upon this subject. He does not. Knowing, therefore, that this is their mission, in order to aid it, he gives the money to them. In other words,.they are the beneficiaries of the will, and its object is accomplished by paying the money to them. It is not necessary, as counsel claim, to show that these societies are actually engaged in the work of .advancing Christ’s kingdom. The testator has settled that question for himself, so far as to say that he proposes to •advance Christ’s kingdom. How ? By paying his money to the Tract Society, and the others named. That is his method of doing what he desires, and so he wills.
It is not as though he bequeathed to a trustee, for the purpose of advancing the kingdom of Christ. He bequeaths to these societies, because they are advancing the kingdom, which is the precise object he wants to accomplish. He first states the object he wishes to effect, and then states how he proposes to effect it. He is willing to pay the money direct to them. To them he trusts that they will forward his cherished idea.
As said, the societies themselves are the direct beneficiaries of the trust, although, if they should attempt to use their money for purposes altogether foreign to those for which they exist, doubtless they might be restrained to those purposes; not by reason of anything in the will, but because they should be restrained to the purposes for which they were created.
In Miller v. Teachout, 24 Ohio St. 525, the syllabus is:
“A testator provided in his will that the residue of his estate, which consisted of personal property, after paying legacies, should be retained by his exetutor, and invested 'by him during the life of his wife for her use, and that, at -her death, it should be appropriated by the executor to the *90 advancement of the Christian religion, and be applied in snob manner as, in his judgment, would best jjromote the object named. The executor accepted the trust, and during his life and that of the widow, the heir brought suit to annul the will for uncertainty as to the object of the trust: Held, That the testator had conferred ample power upon the executor to relieve the bequest of all objections arising from its indefinite character, and that so long as no obstacle exists to the exercise of the power at the proper time, the courts of this state will not, in advance of that time, interpose, on the application of the heir, to prevent its exercise.”
The court say, page 533: “Although the power of the courts of this state to devise a scheme for the application of a vague charity, may well be' questioned, it does not follow that the testator can not create an agency to charge it for him; and it may be regarded as settled, that where a testator, creating a trust to a charitable use, defines the intention of the trust, and invests the trustee with discretionary power over the application of his bounty to the objects,, or for the purposes intended, the bequest will not be held invalid so long as there is no obstacle to the exercise of the powers confided to the trustee, for the exercise of the power may relieve the bequest of all objections arising out of its vague and indefinite character.”
In the case before us, the testator has created these societies an agency to carry out his scheme, he has given them power over the application of his bounty, and the exercise of that power relieves the bequest of all objections made on account of vagueness or uncertainty.
In Board of Education of Fairfield Township v. Ladd, Admr. 26 Ohio St. 210, the syllabus is:
“A testator directed that, after the termination of a life-estate created by his will, his property should be sold, and the proceeds placed in the public school fund of a township named, and applied to the education of the youth of that township. After the making of the will, but before the death of the testator, the part of the township in which *91 lie resided was set off and made to form part of a new township. Held:
“1. That the primary object of the testator was to apply his property to the education of the youth of the town* ship named, and that the reference to the public school fund of the township was merely to indicate a means or instrumentality for administering the charity.”
Item third of this will was:
“And ever being concerned for the prosperity and happiness of my country, and fully believing that the diffusion of light and science constitutes one of the most paramount of Christian duties, I hereby authorize my executor, or his successor, after the death of the afore-named legatees, to cause the whole of my property to be sold to the best advantage, and the proceeds thereof I wish to be placed in the public school fund of Fairfield township, and the same to be applied to the education of the youth of said township.”
The court says: “Fairfield township, and the public school fund of that township, are only referred to as furnishing the means or instrumentality for reaching the intended objects of the testator’s bounty.” In the case before us, these societies are only the means through which the testator proposes to reach the end of advancing Christ’s kingdom.
The court further say: “The primary object of the testator is to apply his property to the education of the youth of Fairfield township, and to accomplish this purpose, he expresses the wish that the proceeds be placed in the public school fund of that township.” So, here, the object of the testator is to apply his property to the advancement of Christ’s kingdom, and to accomplish this purpose, he expresses the wish that the money be placed in the treasuries of the societies he names. There is no vagueness or uncertainty whatever in the bequest.
Although the testator uses the names of the treasurers, this is only his mode of designating the societies to which he desires his money to go, and, though one is an incor *92 porated society, it is entirely capable of taking a personal, bequest; it might be different as to realty. Waller v. Child, Ambl. 524; Burr v. Smith, 7 Vt. 241; Owens v. Missionary Soc. of the M. E. Church, 14 N. Y. 386.
In our opinion, therefore, the objections to this bequest are not sound, and it follows that the judgment of the common pleas and district court, holding the bequests void, must be reversed.

Judgment of district court reversed, and cause remanded.