11299

BOARD OF DIRECTORS OF THEOLOGICAL SEMINARY v. LOWRANCE

(119 S. E., 383)

1. BANKRUPTCY—NEITHER BANKRUPT NOR TRUSTEE NECESSARY PARTIES TO CONTROVERSY BETWEEN PRIOR CREDITOR AND BANKRUPT'S GRANTEE.—Conveyances by bankrupt being valid so far as the bankrupt and subsequent creditors were concerned, neither bankrupt nor his trustee was a necessary party to a controversy between grantee and prior creditor.

2. TRUSTS—LEGAL AND EQUITABLE INTEREST OF TRUSTEE IN SAME PROPERTY HELD TO MERGE.—Where owner of realty purports by deed to convey property to himself as trustee, so as to create an equitable joint life estate in favor of himself and his wife, a contingent single life estate in the survivor, a contingent remainder in fee in favor of their children upon the death of the survivor leaving children, a contingent remainder in fee in favor of himself on the death of his wife depending on the double contingency of the failure of issue of the marriage and of his wife's survival, *held,* that the provisions in favor of himself of a joint life estate, a contingent single life

estate, and a contingent remainder on the double contingency stated became merged in his legal title, and are extinct, leaving him, so far as they are concerned, seized of the fee simple absolute, burdened with the wife's life estate, joint or single, as the case may be.

3. TRUSTS—EQUITABLE CONTINGENT REMAINDER WHICH COULD BE DEFEATED BY DECLARANT'S WILL HELD VOID.—An attempt to create equitable contingent remainders in grantor's heirs, as in the event that grantor predeceased his wife, intestate, she having died without children, or in his devisee in the event that he should predecease her, she having died without children and he having disposed of the property by will, *held* void, being an insufficient designation of beneficiaries, not being susceptible of enforcement and giving trustee an option in awarding the benefits.

4. TRUSTS—VALIDITY DETERMINED AS OF CREATION.—The validity of trust is determined by the status and terms of the trust as they existed at the time of its creation.

5. APPEAL AND ERROR—PLEADING—ORDER ALLOWING FILING OF DELINQUENT ANSWER DISCRETIONARY AND NOT DISTURBED EXCEPT FOR ABUSE OF DISCRETION.—An order allowing defendant, who was in default, to file an answer is within the discretion of the Circuit Judge, and will not be disturbed in the absence of abuse.

Before PEURIFOY, J., Richland, August, 1922.   Affirmed.

Action by the Board of Directors of the Theological Seminary against Elizabeth G. Lowrance.   Judgment for plaintiff, and defendant appeals.

*Mr. Halcott P. Green,* for appellant, cites: *Procedure to set aside voluntary conveyance:*   13 S. C., 451; 18 S. C., 533; 28 S. C., 101; 28 S. C., 314; 23 L. R. A. (N. S.), 1; 12 Cyc., 19.   *Judgment void, Court having no jurisdiction of parties:*   1 Black Judgts., Sec. 218; 76 S. C., 234; 71 S. C., 443; 20 Cyc., 821; 1 Tex. Ap. Cas., 1111; 72 N. Y. Sup., 270; 21 L. R. A. (N. S.), 481.   *Rights of subsequent creditors:*   12 Rich., 259; 1 Hill Eq., 113; Bail Eq., 138. *Postnuptial settlement to carry out ante-nuptial agreement good:*   Snell's Eq., 87; 20 Cyc., 530; 101 S. C., 238.   *Proof of consideration admissible:*   Bail Eq., 141.   *Construction of marriage settlement:*   84 S. C., 464.   *Order allowing answer to be filed proper:*   72 S. C., 433; 72 S. C., 567;

72 S. C., 131; 99 S. C., 221; 109 S. C., 285; 112 S. C., 206; 96 S. C., 450; 77 S. C., 233.

*Messrs. Melton & Belser,* for appellant, cite. *Alleged fraudulent grantor a necessary party:* 12 R. C. L., 656; 20 Cyc., 713; 1 Hill Eq., 338; Rich. Eq. Cas., 185; 37 S. C., 520; 1 Wall, 81; 17 Md., 525; 9 N. J. Eq., 36; 11 N. J. Eq., 302; 15 Cow (N. Y.), 682; 76 Ala., 418; 72 Ala., 507; 75 Ga., 294; 56 S. W., 410; 38 La. Ann., 696; 68 Me., 208; 58 N. C., 11; 11 Heisk, 152; 13 Tex., 338; 12 Ont. Pr., 478. *Construction of deed:* 116 S. C., 234. *Shelley's case:* 84 S. C., 464; 64 S. C., 180; 39 S. C., 131. *Where life estate and remainder are of different quality rule in Shelly's case does not apply:* Perry Trusts, 586; 78 S. C., 143; 106 S. C., 245; 116 S. C., 234; 84 S. C., 484. *Limitation of actions:* 77 S. C., 535; 98 S. C., 402. *Deed is notice to creditors:* 10 Rich., 346; 22 L. R. A. (N. S.), 208. *Interest of grantor contingent and not subject to debts:* 59 S. C., 39. *Plaintiff must pursue joint debtors:* 8 R. C. L., 19.

*Mr. D. W. Robinson,* for respondent, cites: *Plaintiff has equity peculiar to itself and not necessary to join others:* 17 S. C., 163; 3 Strob. Eq., 334; Rich. Eq. Cas., 187; Riley, 245. *Estate in grantor subject to debts:* 102 S. C., 370; 2 Hill Ch., 239; 116 S. E., 7; 4 Rich. Eq., 50; 59 S. C., 45; 3 Pom. Eq. (4th Ed.) Sec. 989; 72 U. S., 441. *Fraudulent conveyances:* 112 S. C., 283; 112 S. C., 278; 103 S. C., 404; 102 S. C., 29; 94 S. C., 68; 32 S. C., 175; 34 S. C., 6; 47 S. C., 481; 73 U. S., 79. *Annulment:* 1 Civ. Code 1912, Sec. 3455; 64 S. C., 364; 27 S. C., 286. *Renewal note not payment:* 17 S. C., 362; 102 S. C., 36. *Proof in Bankruptcy is prima facie evidence of indebtedness:* 200 U. S., 535; 240 Fed., 101; Bankr. Act. Sec. 570; 1 Red. Stat. An. (2d Ed.), 967; Black Bank'y (3d Ed.), Sec. 525. *Answer after demurrer:* 59 S. C., 477; 89 S. C., 582; 58 S. C., 161; 51 S. C., 33; 43 S. C., 221; 15 S. C., 535; 112

S. C., 296; 27 S. C., 324; 14 S. C., 62; Code Proc. 1912, Sec. 223; 72 S. C., 433.

October 1, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The plaintiff, a creditor of one W. B. Lowrance, who is not a party to this action, seeks to recover a judgment against the defendant Elizabeth G. Lowrance, his wife, requiring her to pay the debt which W. B. Lowrance owed to it, upon the ground that she has received conveyances of real estate from him which were voluntary and fraudulent; that she has sold the same, and received and used a part of the proceeds thereof, and that the remainder is in the hands of the Master, represented by a bond and mortgage for $9,000 which the plaintiff claims is applicable to its claim. The matter is extremely complicated, and requires the most patient analysis and consideration of the facts.

It appears that the debt of W. B. Lowrance to the plaintiff arose in this way:

On September 2, 1905, he with six others, made a note (in renewal of a pre-existing indebtedness contracted in 1900) to the plaintiff for $22,750.00, payable January 1, 1907. The interest was paid up to September 20, 1911, with the exception of $125 due by Lowrance, for which he gave his note, dated September 20, 1911, and payable November 20, 1911. The *pro rata* indebtedness of the seven makers was $3,250 each, as of September 20, 1911, Lowrance owing, in addition, the $125 note for interest. From time to time the makers, other than Lowrance, paid in full their proportionate shares of the debt, they remaining, however, liable on their joint obligation for the share of Lowrance. He paid nothing after September 20 1911, and continued liable for $3,250, with interest from September 20, 1911, and for the $125 note on account of unpaid interest.

In 1914 the plaintiff brought suit against W. B. Lowrance upon his indebtedness as stated, and soon thereafter the debtor filed a voluntary petition in bankruptcy, in which was scheduled the plaintiff's demand at $4,350, on September 13, 1915. No further action was taken in the State Court in that suit. The claim was proved and allowed in bankruptcy. It does not appear that the plaintiff received any dividend in the bankruptcy proceeding, or that the bankrupt was discharged; and on September 21, 1917, the present action was instituted.

In January, 1898, two years before the original debt was contracted, Lowrance owned valuable real estate in the City of Columbia at the northeast corner of Hampton Avenue and Pickens Street. It consisted of two parcels: (1) The "corner lot," fronting 66 feet on Hampton Avenue, upon which there were two dwelling houses and a vacant and desirable building lot immediately at the corner; and (2) the "home place," adjoining the corner lot, and fronting 54 feet on Hampton Avenue; both lots extending back on lines parallel with Pickens Street 220 feet.

On January 4, 1898, W. B. Lowrance, in contemplation of marriage with the defendant Elizabeth G. Lowrance, then Green, executed and delivered what is referred to in the record for appeal as a conveyance, but what is plainly a declaration of trust, in which he acknowledges and declares that he is seized, possessed of, and holds the "home place" "in trust for the joint use of the said William B. Lowrance and Elizabeth B., his wife, during their joint lives and the life of the survivor of them, and to suffer and permit them to occupy, possess, and enjoy the same and to take and receive the rents, incomes, issues, and profits thereof; and upon the death of the survivor of them to the child or children of said marriage free of all further trusts; but, if the said Elizabeth B. shall leave no children of said marriage surviving her, then said premises shall revert to Wil-

liam B. Lowrance, or to his heirs or devisees free of all trusts."

On September 20, 1903, W. B. Lowrance conveyed to Elizabeth G. Lowrance the "corner lot" in trust "that if the said Elizabeth G. Lowrance should die without children by the said W. B. Lowrance, then this to be a deed of trust for the use of the said Elizabeth G. Lowrance during her life and at her death to revert to the said W. B. Lowrance, and in case of his death to revert to his heirs; but should the said Elizabeth G. Lowrance have children by the said W. B. Lowrance, then this deed to be absolute in fee simple to her and her children, subject to the condition also that the said W. B. Lowrance is to control the rents and use the said property during his life."' This deed was not recorded until 1909.

On March 18, 1905, W. B. Lowrance conveyed to James M. Green, as trustee, the "corner lot," and his interest "as remainderman therein" in the "home place," under the prenuptial deed of January 4, 1898, upon the following trusts:

"To permit the said William B. Lowrance and Elizabeth Green Lowrance to occupy the said premises, receive the rents and profits therefrom, and use the same as they may desire during their joint lives, and to the survivor for life, and after the death of both of them, to convey to the children of the said William B. Lowrance by Elizabeth Green Lowrance and his son, J. D. Lowrance, by a former marriage, share and share alike, in fee, the children of a deceased child to take the share their parent would take if living. If the said William B. Lowrance has no children by his said wife, Elizabeth Green Lowrance, then to hold the said premises for the use and benefit of the said J. D. Lowrance, during his life, and after his death to the heirs at law of the said J. D. Lowrance. The estate herein created for the benefit of the said J. D. Lowrance shall not be subject to his debts.

"Upon the further trust to sell and convey the whole or any portion of the said real estate first described above, and reinvest the same with similar trusts as those set forth hereinbefore, upon the request in writing of the said William B. and Elizabeth G. Lowrance or the successors of them."

On May 25, 1906, James M. Green, trustee, W. B. Lowrance, and J. Douglas Lowrance (the last named being a son of W. B. Lowrance by a former marriage) conveyed to Elizabeth G. Lowrance the "corner lot," "free from any use or trust in favor of us or any of us." The deed contained the following statement:

"The undersigned J. D. Lowrance has, or is supposed to have, some interest in said premises under the said trust, and it is the desire of the said William B. Lowrance, J. D. Lowrance and James M. Green, as trustee, to convey the said tract of land to Elizabeth G. Lowrance, the principal beneficiary under said deed of trust, in fee simple, so as to confer upon her all right, title, and interest of every character in the said lot of land."

On January 8, 1909, W. B. Lowrance conveyed to Elizabeth G. Lowrance all his right, title, and interest in the "home place," upon a stated consideration of $2,000, the dimensions being stated as 45 feet fronting on Hampton Avenue and running back 220 feet, the frontage not agreeing with that in the prenuptial deed of January 4, 1898, 54 feet. W. B. Lowrance had, on February 6, 1904, given a mortgage upon the "corner lot" to John J. Chambers, trustee, to secure a bond for $3,500, payable 3 years from date, interest at 7 per cent. In October, 1904, this bond and mortgage were assigned to Edward Chambers; on March 1, 1906, by E. Ehrlich to D. W. Robinson, trustee; on April 12, 1912, by D. W. Robinson to ————; on April 14, 1912, by J. A. Abernathy, executor of Sarah O. Burton, to ————. (The record for appeal is incomplete in the particulars above indicated, and also in showing the

title of W. B. Lowrance, as guardian, to said bond and mortgage, which, however, appears to be conceded in the respondent's argument: "W. B. Lowrance, as guardian of certain children, having procured the assignment to him" of said bond and mortgage.)

In 1912 W. B. Lowrance, as guardian for certain children, brought an action against himself, individually, and Elizabeth G. Lowrance, to foreclose the Chambers mortgage upon which there was a balance due of $1,500, the difference ($2,000 and interest) presumably having been paid by Lowrance. This appears to have been a friendly suit. Everything was done by consent. The defendants had no attorney. The summons and complaint were served by acceptance. The answers were signed individually. The order of reference was consented to in like manner. The Master reported $1,989.98 as the balance due, including attorneys' fees. Decree of foreclosure was entered and the sale had on November 4, 1912, at which the property was bid in by Elizabeth G. Lowrance at $3,000. The Master's report of sale contains no statement of disbursements. He, however, executed deed to Mrs. Lowrance on November 11, 1912.

On June 11, 1913, Elizabeth G. Lowrance brought an action against W. B. Lowrance, James M. Green, trustee, J. D. Lowrance, and A. F. Spigner, for the purpose of carrying into effect a contract which she had entered into with Spigner for the sale of both the "home place" and the "corner lot," at $35,000; obviously a friendly suit for specific performance, in which the title of Mrs. Lowrance could be cleared up and established. The complaint in that action alleged fee-simple title to both lots in Mrs. Lowrance. W. B. Lowrance answered, admitting her title as claimed. J. D. Lowrance does not appear to have filed an answer. The trustee answered, setting up his interest as trustee in the "home place," and conceding that Mrs. Lowrance had title to the corner lot. Spigner put in issue the plaintiff's right to convey, in order to have it determined. The Master re-

ported that Mrs. Lowrance had title to the "corner lot," and, as to the "home place," that W. B. Lowrance, as trustee, holds the same for himself and wife, "during their joint lives, and the life of the survivor of them, for any children that may be born to them, but, in the event that no children are born to them, then the remainder estate in fee goes to and vests in James M. Green, as trustee, who holds the same upon the trusts and limitations set out in the trust deed of W. B. Lowrance to James M. Green, as trustee, hereinbefore set out." On October 25, 1913, this report was confirmed by the Circuit Judge, who also adopted the scheme of sale recommended by the Master, which will be explained thus:

The original "corner lot" had a frontage on Hampton Avenue of 66 feet, and the "home place" of 54 feet, each

lot having a depth of practically 220 feet.. The two lots combined, as they were contracted to be sold, having a frontage of 120 feet on Hampton Avenue, and a depth of 220 feet along Pickens Street. The two lots thus considered thrown together were subjected to a new subdivision, as indicated in the accompanying plat, which will be incorporated, reduced, in the report of the case. The lot numbered 1 represents the original "home place," with a strip 4 feet off the "corner lot" and a 10-foot alley leading out to Pickens Street, and less 62 feet cut off the rear and thrown into lot No. 4. It is assumed that in the scheme it was considered that the addition from No. 2 of 4 feet and the 10-foot alley compensated No. 1 for the loss of 62 feet in the rear. At any rate, it was provided that Spigner should comply with his contract by paying cash $5,900 and by executing notes and mortgages as follows: $10,000 on lot No. 1, $9,000 on lot No. 2, $3,000 on lot No. 3, $7,000 on lot No. 4; a total of $34,900, which, for some reason not explained in the record for appeal, lacks $100 of making up the purchase price agreed upon of $35,000. Spigner complied, and these notes and mortgages, with the exception of the $10,000 note and mortgage on lot No. 1, were assigned to Mrs. Lowrance, and (we assume) the cash payment of $5,900 paid to her. In reference to the $10,000 note and mortgage, this provision was made in the decree:

"That the principal sum or estate now represented by the said bond and mortgage shall be held by the Master for Richland County in trust, however, to and for the uses and purposes herein declared; that is to say, to receive and enforce payment of the principal and interest by any and all legal process as when due and payable, to invest and reinvest the said principal estate from time to time as occasion may arise, to receive and collect the interest, income, and profits therefrom, and turn over the same as and when collected to the said W. B. Lowrance and Elizabeth G. Lowrance to and for their joint use and benefit during their

lives, and, upon the death of one of them, to the survivor during his or her life, as the case may be, and upon the death of such survivor to turn over and deliver the corpus only of said estate to J. D. Lowrance and to such child or children as may be born to the said W. B. Lowrance and Elizabeth G. Lowrance, their heirs, executors, administrators and assigns, share and share alike, absolutely and forever. In the event, however, of no children being born to the said W. B. Lowrance and Elizabeth G. Lowrance, to turn over and deliver the corpus only of the said estate to the defendant, J. D. Lowrance, his heirs, executors, administrators and assigns absolutely and forever."

Thereafter, on May 24, 1917, an action was instituted by Mrs. Lowrance and W. B. Lowrance individually and as trustee, against A. F. Spigner *et al.,* for the purpose of reducing the amount due on the $10,000 note and mortgage, we assume upon the ground that the valuation put upon lot No. 1 was excessive to the extent of $1,000. That action resulted in a decree authorizing the Master to accept a bond and mortgage for $9,000 in lieu of the $10,000 bond and mortgage.

On September 21, 1917, as stated, the present action was instituted. All issues of law and fact were referred to the Master of Richland County. The Master, in his report dated May 1, 1922, finds:

(1) That Mrs. Lowrance acquired title to the "corner lot" by virtue of the Master's deed, dated November 11, 1912, in the foreclosure proceedings brought by W. B. Lowrance as guardian upon the Chambers mortgage, hereinbefore referred to.

(2) That the prenuptial deed of January 4, 1898, conveying the "home place" to Mrs. Lowrance, is supported by a valuable consideration, is valid, and cannot be attacked for failure of consideration. That it conveyed a life estate to Lowrance and his wife during their joint lives, thereafter

to the survivor, and, if there be no children of the marriage, to the heirs of Lowrance or his devisees.

(3) That under this construction of the prenuptial deed the only source from which the plaintiff's debt can be realized is the life estate of Lowrance should he survive his wife.

(4) That the conveyances other than the deed of January 4, 1898, were without consideration and made at a time when Lowrance was insolvent.

To this report the plaintiff excepted, and the matter came on for trial before Hon. J. A. Peurifoy, Circuit Judge, who filed a decree dated August 24, 1922. The defendants filed no exceptions to the report of the Master. His Honor, Judge Peurifoy, in his decree, adjudges:

(1) That the conveyance dated September 17, 1903, by W. B. Lowrance to Mrs. Lowrance, of the "corner lot," the conveyance dated March 18, 1905, by W. B. Lowrance to James M. Green, trustee, of the "corner lot" and his interest as remainderman in the "home place," the conveyance dated May 25, 1906, by James M. Green, trustee, W. B. Lowrance, and J. Douglass Lowrance to Mrs. Lowrance of the "corner lot," the conveyance dated January 8, 1909, by W. B. Lowrance to Mrs. Lowrance, of his right, title, and interest in the "home place," were each and all "voluntary, were without consideration, and were made at a time when W. B. Lowrance was insolvent and unable to pay his debts and without reserving property to pay his debts."

(2) That, the conveyances purporting to vest title in Mrs. Lowrance to the "corner lot" being voluntary and void as to plaintiff's claim, the amount of the proceeds of sale of that lot under the foreclosure proceedings of the Chambers mortgage, in excess of the mortgage debt, which excess was declared to be $950, recovered or reserved by Mrs. Lowrance under her claims of title, is recoverable by the plaintiff against Mrs. Lowrance.

(3) That under the prenuptial deed of January 4, 1898, W. B. Lowrance retained in himself the fee in the "home place," and also a half interest in the income therefrom for life, and that all subsequently attempted conveyances of these property rights are void as to the plaintiff.

(4) That the indebtedness of W. B. Lowrance to the plaintiff for which the property, money, proceeds, and interest above mentioned are liable is $5,795.67, with interest from the date of the Master's report, May 1, 1922.

(5) That the Master apply from time to time upon said indebtedness one-half of the income from the $9,000 mortgage on lot No. 1, during the lifetime of Lowrance, and that the corpus of said fund $9,000, upon the death of Mrs. Lowrance without children, be applied so far as may be necessary to the balance due upon said indebtedness.

(6) That the plaintiff have judgment against Mrs. Lowrance for $950 with interest from November 4, 1912, that representing the excess referred to in paragraph 2 above.

(7) That the plaintiff recover costs against Mrs. Lowrance.

From this decree the defendant Mrs. Lowrance has appealed, and by exceptions relies for reversal upon the several positions hereinafter separately considered, arranged in somewhat different order from that in the exceptions.

Defendant's first position:

1 That, as W. B. Lowrance is not a party to this action, no present interest of his in the real estate or other property can be affected by a decree herein, or subjected in this proceeding to the payment of the plaintiff's claim. (Exception 2.)

Neither W. B. Lowrance nor his trustee in bankruptcy has the slightest interest in the fund in controversy. It arises from land which Lowrance has attempted to convey at a time when he was insolvent. These conveyances are perfectly valid so far as Lowrance and subsequent creditors are concerned. Hence, the controversy being between

his grantee and a prior creditor, neither he nor his trustee has the remotest interest in it, and they are not necessary parties. Besides, it appears that this objection was raised by demurrer upon the former appeal (111 S. C., 295; 97 S. E., 830), in which the order of the Circuit Court overruling the demurrer was sustained by this Court.

Defendant's second position:

That the Circuit Judge erred in finding that Mrs. Lowrance joined with W. B. Lowrance in the conveyance to James M. Green, trustee, dated March 15, 1905, of the "corner lot" and his interest as remainderman in the "home place." (Exception 3.)

The Circuit Judge was in error in making the statement complained of. It was, however, an inadvertence which could not possibly have affected the conclusions reached by him.

Defendant's third position:

2    That the Circuit Judge erred in finding that under the prenuptial deed of January 4, 1898, W. B. Lowrance retained in himself the fee in the "home place" and also a half interest in the income thereof for life, and that all subsequent conveyances of these interests were void. (Exception 6.)

It is important to bear in mind what has already been adverted to, that the prenuptial deed, as it is termed, of January 4, 1898, is not at all a conveyance to Mrs. Lowrance, but it is a declaration of trust, the legal effect of which was to transfer the legal title from W. B. Lowrance personally to himself as trustee. It purports, as the defendant contends: (1) To create an equitable joint life estate in favor of W. B. Lowrance and Mrs. Lowrance; (2) a contingent single life estate in the survivor; (3) a contingent remainder in fee in favor of the children of the marriage of W. B. Lowrance and Elizabeth G. Lowrance upon the death of the survivor "leaving children"; (4) a contingent remainder in fee favor of W. B. Lowrance

upon the death of Mrs. Lowrance depending upon the double contingency of the failure of issue of the marriage and of his survival of Mrs. Lowrance; (5) a contingent remainder in fee in favor of the heirs of W. B. Lowrance in the event that he should predecease Mrs. Lowrance, and that she should die without children; (6) a contingent remainder in fee in favor of the devisees of W. B. Lowrance, in the event that he should predecease Mrs. Lowrance, leaving a will disposing of the property, and that she should die without children.

The contention of the defendant may be stated thus: So far as his personal interest in the property is concerned, W. B. Lowrance, by the declaration of trust, has exchanged his fee-simple, absolute title for a joint life estate and a contingent remainder dependent upon the failure of issue of the marriage and his survival of Mrs. Lowrance; that, if both of these contingencies do not occur, he will have lost all interest in the property, except the provisions for a joint life estate or a single life estate, as the case may be, and the power of disposing of the estate by will; that, in the event of his survival of Mrs. Lowrance and death leaving children of the marriage they will take; that, in the event of his death prior to that of Mrs. Lowrance, intestate, upon the death of Mrs. Lowrance without children, the contingent remainder in favor of his heirs will take effect; that, in the event of his death prior to that of Mrs. Lowrance, testate, upon the death of Mrs. Lowrance without children, the contingent remainder in favor of his devisees will take effect; and that consequently the Circuit Judge erred in holding that W. B. Lowrance retained the fee under said deed.

There are, and have been, no children of the marriage, and the practical certainty is that there will be none. At the same time such impossibility cannot be judicially averred, and the Circuit Judge has properly recognized that in his direction that the corpus of the $9,000 mortgage be applied

8—S. C.—126.

to the plaintiff's claim "upon the death of Elizabeth G. Lowrance without child or children." The legal title being in W. B. Lowrance, although as trustee, and he being the beneficiary of the joint life estate, the contingent single life estate upon the survival of his wife, and the contingent remainder dependent upon the double contingency of failure of children of the marriage upon the death of Mrs. Lowrance and his survival of Mrs. Lowrance, it follows that these equitable interests are merged in the legal title, and have become extinct.

"No person can be both trustee and *cestui qui* trust at the same time, for no person can sue a subpoena against himself. Therefore, if an equitable estate and a legal estate meet in the same person, the trust of confidence is extinguished, for the equitable estate merges in the legal estate." 1 Perry, Trusts (3d Ed.), § 13.

"A trust is the right of a person to the beneficial enjoyment of property, the legal title to which is in another." 1 Lewin, Trusts (8th Ed.), 91.

"It is undoubtedly true that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest." *Wilson v. Harrold,* 288 Ill., 388; 123 N. E., 563; 39 Cyc., 243; 28 A. & E. Enc., 955; 1 Perry, Trusts (6th Ed.), § 347. *Burbach v. Burbach,* 217 Ill., 547; 75 N. E., 519. *Spengler v. Kuhn,* 212 Ill., 186; 72 N. E., 214.

"A person cannot be beneficiary and trustee for himself under a trust deed at the same time." *Shope v. Unknown Claimants,* 174 Iowa, 662; 156 N. W., 850.

An "essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment; and no trust can exist where the same person possesses both. If the legal and equitable estates come together in the same person the equitable is merged in the legal and the trust is terminated. *Axtell v. Coons,* 82 Fla., 158; 89 South., 419.

"It is apparent, therefore, that, whenever a trust is alleged to be created by any instrument or instruments, there must be a separation of the legal estate from the beneficial enjoyment, and that a trust cannot exist where the same person possesses both. As expressed by Mr. Lewin in his work on Trusts, Vol. 1, p., 14 (1st Am Ed.): A trust "is a confidence reposed in some other than the *cestui que* trust, for which the *cestui que* trust has no remedy but by subpoena in chancery; * * * for, as a man cannot sue a subpoena against himself, he cannot be said to hold upon trust for himself. If the legal and equitable interests happen to meet in the same person, the equitable is forever merged in the legal." *Doan v. Vestry,* 103 Md., 662; 64 Atl., 314; 7 L. R. A. (N. S.), 1119; 115 Am. St. Rep., 379.

"Where the same person is, under a will constituted a trustee and a beneficiary, the trust fails, and such person takes a legal estate." *Truck v. Knapp,* 42 Misc. Rep., 140; 85 N. Y. Supp., 1001.

In *Swisher v. Swisher,* 157 Iowa, 55; 137 N. W., 1076, it is said:

"As grantee in the deed he acquired the legal title, [and, we interpolate, the same result follows in the reservation of the legal title under a declaration of trust], and as a beneficiary of the trust he acquired the equitable title or right to share in the distribution; and the union of the legal and equitable title in the same person leaves nothing outstanding upon which the trust or delegated power can operate."

See, also, *In re* Fox Estate, 264 Pa., 478; 107 Atl., 863.

In *Odom v. Morgan,* 177 N. C., 367; 99 S. E., 195, it is said:

"When a legal and equitable estate of the same class and quantity coincide in one and the same person, or when the former is the larger of the two, the latter is merged in the legal estate and becomes extinct"—citing Tiedman on Real Property, § 512.

A man cannot hold in trust for himself, but the whole interest vests in him absolutely, and any limitations over are void. *Butler v. Godley,* 12 N. C., 94. If, therefore, as we have endeavored to show and have concluded, the provisions in favor of himself, W. B. Lowrance, of a joint life estate, a contingent single life estate, and a contingent remainder upon the double contingency stated above have become merged in his legal title, and are extinct, leaving him, so far as they are concerned, seized of the fee-simple absolute, burdened with the life estate of Mrs. Lowrance, joint or single, as the case may be, the further questions arise as to the validity of the trusts attempting to create equitable contingent remainders in the heirs of W. B. Lowrance in the event that he should predecease Mrs. Lowrance intestate, she having died without children, or in his devisees, in the event that he should predecease Mrs. Lowrance, she having died without children, and he having disposed of the property by will.

Assuming that the word "heirs" in this connection was used to designate a class, as *"descriptio personarum"* (a construction possibly supported by *Bishop v. Tinsley,* 64 S. C., 180; 41 S. E., 895. *Perry on Trusts,* 586. *Avinger v. Avinger,* 116 S. C., 125; 107 S. E., 26, and cases cited therein), if, instead of a declaration of trust, there had been a conveyance to a trustee, providing that, in the event of the death of W. B. Lowrance prior to that of his wife, she leaving no children, the estate should go to his heirs, the case of *Bishop v. Tinsley,* 64 S. C., 180; 41 S. E., 895, would, it appears, be ample authority to sustain the trust. But there are three striking circumstances which differentiate the case at bar from *Bishop v. Tinsley:* (1) In that case the title vested in the trustee; it went out of the grantor-owner and never returned; in the case at bar the title remains in the grantor or declarant. (2) The limitation is to the heirs of the grantor, who constitutes himself the trustee. (3) There is a power conferred upon W. B. Lowrance to make an

entirely different disposition of the property by will. These differentiating circumstances attract attention to certain essential elements of a trust which must exist at the time of the creation of the trust, and which are absent in the trust under consideration: (1) The beneficiaries must be definitely and certainly designated; (2) the benefits must be so clearly defined as to be susceptible of enforcement by the Court, if the trustee should refuse to allow them; (3) there must be no option on the part of the trustee in awarding the defined benefits to the defined beneficiaries.

That these matters are to be determined by the status and terms of the trust as they existed at the time of the creation of the trust is indisputable.

In the case of *Tilden v. Green,* 130 N. Y., 29; 28 N. E., 880; 14 L. R. A., 33; 27 Am. St. Rep., 487, it is held that the validity of the trust depends upon the nature at the time of its creation, and not upon its execution by the trustee:

"The rights of heirs and next of kin exist under the statutes of descent and distribution, and vest immediately upon the death of the testator. If the trust or power attempted to be created by the will, or the disposition therein made, is valid, their rights are subject to it; but, if invalid they immediately become entitled to the property. Hence the existence of a valid trust is essential to one claiming as trustee to withhold the property from the heir or next of kin. What a trustee or donee of a power may do becomes, therefore, immaterial. What he does must be done under a valid power, or the act is unlawful."

That the beneficiaries must be definitely and certainly designated is fully sustained by the authorities.

"If a trust be clearly created in a party, but the terms by which it is created are so vague and indefinite that Courts of equity cannot clearly ascertain either its object or the persons who are to take, then the trust will be held entirely to fail, and the property will fall into the general funds of

the author of the trust." 2 Story Eq. Jur (14th Ed.), §1322.

"In order that these trusts shall be sustained, they must be of such a clear and definite nature that the Court can deal with them in the exercise of its ordinary judicial functions, and render them effective." *McHugh v. McCole,* 97 Wis., 166; 72 N. W., 631; 40 L. R. A., 724; 65 Am. St. Rep., 106.

"In the creation of a trust by will or deed the beneficiary must be a definite, certain, ascertainable person, natural or corporate, else the trust is not enforceable." *Morris v. Morris,* 48 W. Va., 430; 37 S. E., 573. *Weaver v. Spurr,* 56 W. Va., 95; 48 S. E., 852. *Philadelphia Baptist Association v. Hart,* 4 Wheat., 1; 4 L. Ed., 499.

"A trust must be reasonably certain in its terms as to the property embraced in the trust, the beneficiaries, the nature of the estate they are to have, and the manner in which the trust is to be executed, and when either of the elements is indefinite and uncertain, the trust must fail." *Smullin v. Wharton,* 73 Neb., 667; 103 N. W., 288; 106 N. W., 577; 112 N. W., 622; 113 N. W., 267; Pom. Eq. Jur. § 1009.

Unless there are competent and certain beneficiaries named or described a trust must fail. *Root v. Kuhn,* 51 Cal. App., 600; 197 Pac., 150.

"According to the decisions in," Maryland, " a trust cannot be upheld unless it be of such a nature that the *cestuis que* trust are definite and capable of enforcing its execution in a Court of equity." *Isaac v. Emory,* 64 Md., 333; 1 Atl., 713.

In a note to *Neill v. Keese,* 51 Am. Dec., 756, it is said:

"It has long been a settled rule of law, that where property is given by will or deed upon trust, and the trust is too uncertain, indefinite, and vague to be carried into effect, a trust will result to the donor, his heirs or next of kin"— citing an array of authorities.

"The absence of a defined beneficiary is, as a general rule, a fatal objection to any attempt to create a valid trust." *Holland v. Alcock,* 108 N. Y., 312; 16 N. E., 305; 2 Am. St. Rep., 420.

The uncertainty as to the component membership of the class provided for does not affect the validity of the trust; it is the uncertainty whether or not, upon the happening of the contingency, the class will become the beneficiary. This uncertainty is apparent when the trustee is clothed with the power of making by will an entirely different disposition of the property.

Taking the trust provisions as they stand now regardless of what the trustee has done or may do it seems clear that, if resort by the expectant heirs to the Court should be made, it would be impossible to frame a decree giving them relief, for they would be met by the objection that their interests may at any time be defeated on the execution of a will by the trustee giving the estate an entirely different direction; and that consequently under the terms of the trust they are undefined and uncertain. It is absolutely essential to the validity of a trust that the power conferred upon the trustee, or, as in the case at bar, reserved, be so defined and limited by the donor that the Courts can either compel or curtail its exercise, or, on default of its exercise by the trustee, execute the power by an ordinary decree in equity. *Levy v. Levy,* 33 N. Y., 104. *Dillaye v. Greenough,* 45 N. Y., 445. *Power v. Cassidy,* 79 N. Y., 602; 35 Am. Rep., 550. *Prichard v. Thompson,* 95 N. Y., 81; 47 Am. Rep., 9. *In re* O'Hara's Will, 95 N. Y., 418; 47 Am. Rep., 53. *Holland v. Alcock,* 108 N. Y., 312; 16 N. E., 305; 2 Am. St. Rep., 420.

"A trust power, to be valid, therefore, must designate some person or class of persons other than the grantee of the power as its objects, and it must be exercised for the sole benefit of such designated beneficiary, and its execution

may be compelled in equity." *Tilden v. Green,* 130 N. Y., 29; 28 N. E., 880; 14 L. R. A., 33; 27 Am. St. Rep., 487.

"In order that these trusts shall be sustained, they must be of such a clear and definite nature that the Court can deal with them in the exercise of its ordinary judicial functions, and render them effective." They are void for uncertainty unless "certain and competent beneficiaries are named who may come into a Court, and claim and establish their right to the fund and to the execution of the trusts of the will." *McHugh v. McCole,* 97 Wis., 166; 72 N. W., 631; 40 L. R. A., 724; 65 Am. St. Rep., 106.

"It has been repeatedly held by this Court that the class of beneficiaries should be so designated and determined that, if the executors or trustees to whom the fund is given should die before the execution of the trust, the Court could distribute the fund equally among the members of the class." *Fairchild v. Edsom,* 154 N. Y., 199; 48 N. E., 541; 61 Am. St. Rep., 609.

It is equally clear that, when the disposition of the estate is confided to the pleasure, will, or whim of the trustee, the trust fails, as is the case here, when the will of W. B. Lowrance may entirely defeat the interests of the heirs.

"The law is settled in this State that a certain designated beneficiary is essential to the creation of a valid trust. The remark of Judge Wright in *Levy v. Levy,* 33 N .Y., 107, that if there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust, without a certain beneficiary, who can claim its enforcement, is void,' has been repeated and reiterated by recent decisions of this Court ( *Prichard v. Thompson,* 95 N. Y., 76. *Holland v. Alcock,* 108 N. Y., 312; 11 Cent. Rep., 861. *Read v. Williams,* 125 N. Y., 560) ; and the objection is not obviated by the existence of a power in the trustees to select a beneficiary, unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the Court can ascertain who were

the objects of the power." *Tilden v. Green,* 130 N. Y., 29; 28 N. E., 880; 14 L. R. A., 33; 27 Am. St. Rep., 487.

It is interesting to note that this case involved a construction of the will of Samuel J. Tilden of New York. The trust was held too indefinite and uncertain:

"Every expression in the will indicates the bestowal [in the case at bar, the reservation] of complete discretionary power to convey [to devise or not to devise], and the creation and bestowal of such a power in the executors [in the trustee] is wholly opposed to and fatal to the existence of an executory devise [of a trust]."

The discretionary power in a trustee to give or withhold is incompatible with the existence of a valid trust. *Holland v. Alcock,* 108 N. Y.. 312; 16 N. E., 305; 2 Am. St. Rep., 420. *Madison v. Andrews* 1 Ves. Sr., 60. *Alexander v. Alexander,* 2 Ves. Sr., 640. *Kemp v. Kemp,* 5 Ves. Jr., 849; 2 Sug. Powers, 190. *Gower v. Mainwaring,* 2 Ves. Sr., 88. *Potter v. Chapman,* Amb., 98. *Lee v. Young,* Y. & C., 532; Chaplin's Will, 11 Jur. (N. S.), 382. *Pendergass v. Pendergass,* 3 H. L. Cas., 195; Coe's Trusts, 4 Kay & J., 199; 2 Perry, Trusts, § 510; Hill, Trustees, 101. *Morice v. Dunham,* 10 Ves. Jr., 536. *Ommaney v. Butcher,* Tum & R., 270. *Gibbes v. Ramsey,* 2 Ves. & B., 297. *Bull v. Vardy,* 1 Ves. Jr., 270. It seems clear that when the expression or devise in the will is ever so strong, it will not be construed to create a trust for others, when the will contains an expression that the donee is nevertheless to be free to act in his own discretion. *St. James Parish v. Bagley,* 138 N. C., 384; 50 S. E., 841; 70 L. R. A., 160; Redf. Wills, 418. *Giles v. Anslow,* 128 Ill., 187; 21 N. E., 225.

"Where the amount plaintiffs were to receive was wholly discretionary with the alleged trustee, there was no enforceable trust." *Annis v. Huggins,* 35 S. D., 300; 152 N. W., 114.

In *Brown v. Rinshaw,* 57 Md., 67, the grantor conveyed to the trustee, in trust for the use of himself for life and of

his children after his death, and in default of children to the appointees of the grantor by will, and in default of such appointees then to the use of the right heirs of the grantor. It was held that the grantor took an equitable estate in fee notwithstanding the intervening power of appointment.

"Absolute control and power of disposition are inconsistent with the idea of a trust." *Axtell v. Coons,* 82 Fla., 158; 89 South., 419.

The most that can be said of the interests of the expectant heirs of W. B. Lowrance is that, if he should die without having made a will, then they could come into Court and enforce the trust; a hypothetical situation that at once establishes the uncertainty of their interests at the time the declaration of trust was executed. Another consideration of controlling force is that W. B. Lowrance, the owner of the fee, subject, as the appellant claims, to be divested by his death intestate, is given the absolute power of disposition of it by will, in the event that Mrs. Lowrance, surviving him, may die without children. The contingent remainder to his heirs is inconsistent with the fee-simple title, coupled with the necessary incident of absolute power of disposition by will. The case of *Bank v. Dowling,* 52 S. C., 345; 29 S. E., 788, is replete with authorities holding that "an unlimited power of disposition given by will, carries the absolute interest in the property." The Circuit Judge was therefore right in holding that the title to the property was reserved by W. B. Lowrance.

Defendant's fourth position:

That the Circuit Judge erred in holding that upon the death of Mrs. Lowrance without children the corpus of the $9,000 fund in the hands of the Master, or as much thereof as may be necessary, be applied to the plaintiff's claim. (Exception 7.)

The specifications are: (1) He should have held that the only source from which the plaintiff's debt can be realized out of the property is the life estate of W. B. Lowrance,

should he survive his wife; (2) that the interest of W. B. Lowrance in the "home place" was conveyed by him to Mrs. Lowrance by deed dated July 9, 1909; (3) that the interest of any person not a party to this action cannot be disposed of herein.

The first specification (a) cannot be sustained for the reasons stated in the disposition of the defendant's third position.

The second specification (b) cannot be sustained for the reason that the Master has found that the deed referred to was voluntary, made while W. B. Lowrance was insolvent, and is void as to the plaintiff. No exception was filed to this holding, and the matter cannot now be reopened. Besides, the finding of this matter was confirmed by the Circuit Judge, and in his conclusion we concur.

The third specification (c) cannot be sustained for the reasons given in the disposition of the defendant's first position:

Defendant's  fifth  position:

That the Circuit Judge erred in not finding that the conveyances from W. B. Lowrance to J. M. Green, trustee, dated May 18, 1905, was made in pursuance of the agreement made with Mrs. Lowrance before marriage, to provide for her an adequate support. (Exception 4.)

There is certainly nothing in the declaration of trust of January 4, 1898, which lends color to this contention. The strong implication from that instrument is that the provision he was thereby making was considered sufficient for the purpose indicated.

"Whereas,  *  *  *  William B. Lowrance desires by a gift made in advance of said marriage to make a substantial provision for the said Elizabeth G. Green, independent of any other estate he may have and possesses, and in which by reason of her marital rights she may have so acquired an interest."

The defendant made no such contention before the Master and there was no finding by him as to it and no evidence of it called to our attention. On the contrary, the Master found that this conveyance was voluntary and void as to the plaintiff, from which conclusion negativing the present contention there was no exeception by the defendant.

Defendant's sixth position:

That the Circuit Judge erred in rendering judgment against Mrs. Lowrance in favor of the plaintiff for $950 with interest from November 4, 1912, that representing the surplus proceeds of the sale of the "corner lot," under foreclosure of the Chambers mortgage. (Exception 5.)

The specifications (a) and (b) in support of this general objection have been disposed of herein in the consideration of the defendants' fifth position. Specification (c) is as follows:

"Because no such claim is alleged or made in the complaint, nor until the plaintiff's exception to the Master's report, and defendant has had no opportunity to contest, either by pleading or evidence, the claim so made for the first time."

While the complaint does not specifically refer to the foreclosure of the Chambers mortgage, it does allege the void conveyance of the "corner lot" to Mrs. Lowrance, and that fact was so found by the Master and not excepted to by the defendant. The complaint sought to hold the defendant liable for the entire value of the "corner lot," but, when it appeared that that lot had been sold under the foreclosure of a valid mortgage, and purchased by Mrs. Lowrance, the Circuit Judge very properly allowed her credit for the amount of the mortgage, and held her liable for the difference between it and the purchase price, $3,000. The complaint is amply sufficient to cover the matter, and the defendant is fortunate in not being compelled to account for the full value of the lot, which was evidently worth many times $3,000. The foreclosure of the Chambers mortgage by Lowrance, as guardian, against himself and his wife, by

a suggestively complacent proceeding, in connection with the assiduous efforts to put all of their property beyond the reach of creditors, does not appeal to the Court's conception of a proper responsiveness to financial obligations.

Specification (d) suggests the bar of the statute of limitations to the demand of the plaintiff that Mrs. Lowrance account for this excess. No such contention was made before or relied upon by the Master. We find in the answer no plea of the statute except as to the claims of the plaintiff represented by the note. As to it the Master found that "said indebtedness was a valid and existing debt of said W. B. Lowrance, at the time of the commencement of this action, in favor of the plaintiff," to which no exception was taken by the defendant.

Defendant's seventh position:

That the Circuit Judge erred in directing that the costs of this action be paid by Mrs. Lowrance.

We see no reason why the conclusion of the Circuit judge in this respect should be disturbed.

Plaintiff's exceptions and grounds to sustain the decree:

The plaintiff insists that the defendant was in fault and that the allowance of her answer was improper. This, as has often been decided, is a matter of discretion with the Circuit Judge, and his order will not be disturbed in the absence of an abuse, which has not been shown.

The judgment of this Court is that the decree appealed from be affirmed.

MESSRS. JUSTICES WATTS, FRASER and MARION concur.

MR. CHIEF JUSTICE GARY did not sit.