11863

EX PARTE LOWRANCE
*IN RE.* BOARD OF DIRECTORS OF THEOLOGICAL SEMINARY
v. LOWRANCE *ET AL.*

(130 S. E., 843)

1. CONVERSION—NOT NECESSARY TO INVOKE DOCTRINE OF EQUITABLE CONVERSION TO CONSTRUE INTO CONVERSION A TRANSACTION WHICH PARTIES HAVE MADE SUCH.—It is not necessary to invoke doctrine of equitable conversion to construe into a conversion a transaction which parties themselves have made a *fait accompli* as such.

2. CONVERSION—COURT OF EQUITY MAY, UNDER PROPER CIRCUMSTANCES, DECREE CONSTRUCTIVE ALTERATION IN NATURE OF PROPERTY.—Court of equity may, under proper circumstances, decree a constructive

alteration in nature of property by which real estate is considered for certain purposes as personalty and distributable as such, or personal estate as realty.

3. CONVERSION—CONSENT, BY OWNER, TO SALE OF PROPERTY IN WHICH HE HAD CREATED CERTAIN TRUSTS, RESERVING INTEREST THEREIN TO HIMSELF, AMOUNTS TO A CONVERSION.—Where owner, after creating certain trusts in property, consented to decree authorizing sale, owner was transferred to note and mortgage received on the sale; of property, actual conversion took place, and remainder interest of owner was transfered to note and mortgage received on the sale; hence owner could not declare real estate homestead exemption, notwithstanding Court *held* that trust deeds were voluntary and in fraud of creditors.

Before FEATHERSTONE, J., Richland, April, 1925. Reversed.

Action by the Board of Directors of the Theological Seminary against Elizabeth G. Lowrance and others, wherein W. B. Lowrance petitions for setting aside of homestead exemption. From a decree in favor of petitioner, plaintiff appeals. Reversed, with directions.

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellant, cite: *Judgment, execution and return not necessary:* 111 S. C., 295. *Plaintiff with equity peculiar to itself need not join others:* 126 S. C., 89. *Equitable conversion:* 1 Pom. Eq. Jur. (4th Ed.), Secs. 161 and 371; 3 Pom. Eq. Jur. (4th Ed.), Secs. 1159, 1160, and 1167; 126 S. E., 189; 6 R. C. L., 1065, 1066 and 1078. *Doctrine of equitable conversion not applicable:* 16 S. C., 308. *Former appeals in this case:* 111 S. C., 295; 97 S. E., 80; 126 S. C., 89; 119 S. E., 383. *Cases distinguished:* 86 S. C., 343; 64 S. C., 101; 29 S. C., 175; 20 L. R. A. (N. S.), 124; 116 A. S. R., 248.

*Mr. Halcott P. Green,* for respondent, cites: *Equitable converson:* 13 C. J., 873, 876, 883 and 888; 1 Edn. (N. Y.), 212; 108 Minn., 60; 133 A. S. R., 400; 87 Ark., 502; 128 A. S. R., 36; Dud. Eq., 212; 13 S. C., Eq., 212; 8 Rich. Eq., 291; 45 S. C., 338; 64 S. C., 101; 86 S. C., 343. *When*

*right to homestead determined:* 21 S. C., 11; 23 S. C., 316; 26 S. C., 1; 51 S. C., 101. *Sale of homestead by debtor and other lands purchased:* 73 S. C., 325.

November 20, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Proceedings in homestead, instituted by the petitioner, W. B. Lowrance. The property in which a real estate exemption of $1,000.00 is demanded consists of a certain note and mortgage for $9,000.00, with accumulation of intrest collected upon them, which, under a decree of the Court in the case of Elizabeth G. Lowrance against A. F. Spigner and others, are held by the Master of Richland County, in trust, to collect the interest annually and pay the same to W. B. Lowrance and Elizabeth G. Lowrance during their joint lives, and to the survivor for life, the corpus, at the death of the survivor, to go to J. D. Lowrance, a son by a former marriage, and the children born to W. B. Lowrance and Elizabeth G. Lowrance; but, if there should be none such, absolutely to J. D. Lowrance.

The Circuit Judge, Hon. C. C. Featherstone, rendered a decree, sustaining the petitioner's claim. The Seminary, plaintiff in the main cause, has appealed.

The exceedingly complicated facts in the main cause are circumstantially detailed in the opinion of this Court heretofore rendered and reported in 126 S. C., 92; 119 S. E., 383. Resort thereto may be conveniently made. A repetition of them here is not necessary, though it may be said that a thorough mastery of them is essential to an understanding of this opinion.

In 1913, Mrs. Lowrance, claiming the fee to the entire property, consisting of the corner lot and the home place, contracted to sell it to A. F. Spigner for $35,000.00. There appeared such a "tangled web" of declarations of trust, trust deeds, conveyances, mortgages, and sales, that he very

sensibly insisted upon a judicial imprimatur of Mrs. Lowrance's title.

Accordingly a formal proceeding was instituted by Mrs. Lowrance against Spigner, W. B. Lowrance, J. M. Green, Trustee, and J. D. Lowrance, for the purpose of clearing up and establishing the title, so that a valid title could be passed; Spigner, apparently only to this extent, contesting the matter of complying with the contract. These parties set up their respective interests in the property as follows: Mrs. Lowrance, as stated, claimed title to the entire property. W. B. Lowrance answered, admitting her title. J. D. Lowrance made no answer. J. M. Green answered, setting up his interest as trustee in the "home place" under the trust deed of March 18, 1905. Spigner put in issue the title of Mrs. Lowrance in order to have it determined. The Master reported that Mrs. Lowrance had title to the corner lot; as to the home place, that W. B. Lowrance, as Trustee (evidently under the antenuptial declaration of trust), held it for himself and wife during their joint lives and the life of the survivor; and that "the remainder estate," at the expiration of that time, vested in J. M. Green, Trustee, under the trust deed of March 18, 1905. This report came on for confirmation before a succeeding Circuit Judge, who appeared to have disregarded the recommendations of the Master as to the title to the corpus vesting in the Trustee, and signed a decree as set forth in the opening paragraph of the opinion, vesting it in J. D. Lowrance. He adopted the scheme of sale recommended by the Master, as explained in 126 S. C., at page 97; 119 S. E., 383. Spigner complied with the terms of the sale as directed by the decree, by paying in cash $5,900.00, and by executing the notes and mortgages described on page 97 of the former opinion. The cash payment and the notes and mortgages, with the exception of the separate note and mortgage covering the home place, were delivered to Mrs. Lowrance as her property. The last named securities which were stated

to represent "the principal sum or estate," that is, the home place, were directed by the decree to be held by the Master in trust.

The $9,000.00 note and mortgage so delivered to the Master, in trust, represents the proceeds of the sale of the home place. The corpus represents the remainder, the fee-simple title, which, as held by the Court upon the former appeal (page 112 [119 S. E., 383]), was reserved by W. B. Lowrance in the antenuptial declaration of trust, dated January 4, 1898. The interest upon it expresses the income.

On March 18, 1905, W. B. Lowrance had attempted by deed to convey "all the right, title, and interest which I have, as remainderman in and to the real estate (the home place), conveyed by me to the said Elizabeth B. Green, on the 4th day of January, 1898" (the antenuptial declaration of trust), to J. M. Green, as Trustee, for the joint use of himself and wife during their lives and for the use of the survivor for life, with remainder to the children born to them and his son, J. D. Lowrance, by a former marriage; and, if there should be no child by the second marriage, to J. D. Lowrance. On January 8, 1909, W. B. Lowrance had attempted to convey "all of his right, title and interest" in the home place to Elizabeth G. Lowrance.

In the main cause, to which Elizabeth G. Lowrance and J. M. Green, Trustee (but neither W. B. Lowrance nor J. D. Lowrance. On January 8, 1909, W. B. Lowrance had referred to were adjudged voluntary and in fraud of the rights of the plaintiff creditor.

Accordingly it was adjudged that "the corpus of said fund, $9,000.00, upon the death of Mrs. Lowrance without children, be applied so far as may be necessary to the balance due upon said indebtedness" (page 101 [119 S. E., 387]), and that in the meantime one-half of the accumulated interest in the hands of the Master and of the interest to be collected during the lifetime of W. B. Lowrance (his

interest in the income under the antenuptial declaration of trust) be applied to said indebtedness.

It is in this fund that the petitioner sets up his claim to homestead upon the ground: (1) That the former judgment of this Court, having set aside the deeds above referred to, has the effect of revesting title to said property in him; (2) that the proceedings in the case of *Lowrance v. Spigner* and the consummated sale and execution of mortgages thereunder have not constituted a conversion of said property into personal property and that consequently said fund has retained its nature as real estate.

It is not necessary to decide the interesting question whether the grantor in a fraudulent conveyance is entitled to a homestead exemption in the land after the conveyance has been subordinated to the rights of creditors. The case of *Wood v. Timmerman,* 29 S. C., 180; 7 S. E., 74, strongly indicates that if the wife, the fraudulent grantee, had set up her claim to homestead as the assignee of her husband, she and not the husband would have been entitled to homestead, upon the principle that the conveyance was void only as to creditors, being perfectly valid as to the parties to it. Section 5218, Volume 3, Code of Laws 1922.

The facts narrated above are so clear that a conversion of the petitioner's interest in the real estate into personal property has taken place in consequence of the proceedings in the Spigner suit, that that issue is conclusive upon the right of the petitioner.

It is found by the Circuit Judge that, if it be considered personal property, it is not disputed that he "has already been alloted his exemption in personalty." The counsel for the petitioner states in his printed argument that no contention is made, but that Lowrance has received his personal exemption in property turned over to him in bankruptcy proceedings. So that, if this Court should decide that the equitable right which Lowrance had to his half of the interest is personal property, the decree below allowing him

a homestead exemption of $1,000.00 in said interest will have to be reversed.

It is stated in the Circuit decree of his Honor, Judge Featherstone, referring to the proceedings in the specific performance case of Mrs. Lowrance against Spigner:

"They also, by a consent proceeding, sold the land and took in its place a bond and mortgage which was fastened with a trust. This proceeding was held void as to creditors, and its effect destroyed by the decree."

We do not find anything in the former judgment of this Court which justifies this statement. The opening paragraph of the opinion demonstrates that the plaintiff made no attack upon that proceeding; on the contrary, recognized its validity, and was seeking to subject to the payment of its debt the proceeds of the securities which resulted from the sale made under the authority of the decree.

Equally and for the same reason the further statement is untenable:

"Here the sale was held void, and, therefore, stands as though no sale had been made. And sale was held void at instance of the creditor, who cannot be heard to say that the sale was valid."

Counsel for the petitioner state in their printed argument:

"So far as the deed to Spigner and the proceedings confirming same are concerned, he being an innocent purchaser, as against him the deeds cannot be set aside, for he or his grantors (grantees?) now hold the title."

If Spigner's title is unassailable, the plaintiff certainly has no remedy against the real estate, and, if it does not recognize the validity of that proceeding under which Spigner obtained title, and seek its remedy against the securities which resulted from the sale, it is without any remedy.

The contention of the petitioner is that under the principle of the doctrine of equitable conversion there has been no conversion of the real estate into personalty; that

the mortgage for $9,000.00 and the interest represent the "home place" and the income from it; that it has retained its character as real estate, out of which the homestead exemption of $1,000.00 must be allowed.

The plaintiff creditor does not invoke the doctrine of equitable conversion to sustain its position that the real estate has been converted into the equivalent of money, a note and mortgage, personal property. That doctrine has no application to the issue. We are dealing here with an actual completed transaction, as complete a transmutation of real estate into personal property as could possibly be conceived. It is not necessary to invoke the doctrine of equitable conversion to .construe into a conversion a transaction which the parties themselves have made a *fait accompli* as such.

A Court of Equity, may, under proper circumstances, decree a constructive alteration in the nature of property, by which real estate is considered for certain purposes as personalty and distributable as such, or personal estate as realty. It is an application of the maxim in equity, that equity regards that as done which ought to be done. It would be a legal heresy to coin a new maxim, that equity will undo what has and should have been done. The doctrine is applied only in cases where there has been no actual conversion, where the property remains all the time, in fact, realty or personalty, just as it was; but for the purposes of the will or other instrument, so far as may be necessary, and only so far, it is treated in contemplation of law as if it had been converted. 6 R. C. L., 1087.

For instance, a will directs that certain real estate be sold and the proceeds divided among certain beneficiaries. Before a sale may have been had, while the real estate continued to be real estate, under the doctrine it is considered and treated as personal property; and, should a beneficiary die in the meantime, his interest would vest in his personal representative, and not in his heirs at law. After the sale

shall have taken place, and the real estate actually converted into money, there obviously is no necessity to invoke the doctrine. So, where a will directs that certain funds be invested in real estate for the benefit of certain persons, before the investment shall have been made, while the money retains its character as money, personal property, under the doctrine it will be considered and treated as real estate; and, should a beneficiary die in the meantime, his interest will vest in his heirs-at-law, and not in his personal representative. After the investment shall have actually been made and the money converted into real estate, there obviously is no necessity to invoke the doctrine.

Instances of actual conversion (not equitable conversion) are presented where real estate is sold by what has been termed "paramount authority," as under order of Court, under a statute, or for a specific purpose, to pay debts, partition, foreclosure, taxes, and the like. In such cases a conversion (actual, not constructive) takes place in so far only as may be necessary to accomplish the particular purpose of the sale; the surplus is held not to have been converted and to have retained its character as real estate. 13 C. J., 876. Pom. Eq. Jur. (1st Ed.), § 1167. *Mendenhall v. Mower*, 16 S. C., 303; 6 R. C. L., 1078.

There cannot be a doubt from the facts that an actual conversion took place, and that the interest of W. B. Lowrance in the home place was transferred from the real estate to the note and mortgage, which was the equivalent of money, personal property. The parties themselves, without the aid of the Court, could have accomplished the same result, which, having by their consent been accomplished by the Court, is the same in effect.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the petition for homestead be dismissed.

MESSRS. JUSTICES WATTS and MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. CHIEF JUSTICE GARY dissents.